IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JASON ZIMMERMAN,** on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>                vs.<br><br>**PORTFOLIO RECOVERY ASSOCIATES, LLC,**<br><br>                Defendant. | CASE NO. 09-cv-04602-PGG<br><br>CLASS ACTION |

**PORTFOLIO RECOVERY ASSOCIATES'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION**

On the Brief:

Donald S. Maurice, Esq.
Rachel Marin, Esq.

                                            MAURICE & NEEDLEMAN, P.C.
                                            Attorneys for Defendant
                                            Portfolio Recovery Associates, LLC
                                            5 Walter E. Foran Blvd., Suite 2007
                                            Flemington, NJ 08822
                                            (908) 237-4550

Date: September 10, 2012

**TABLE OF CONTENTS**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.       THE CLASS CONSISTS OF 19 PERSONS BECAUSE LATE OPT INS MAY NOT BE COUNTED WITHOUT A SHOWING OF EXCUSABLE NEGLECT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.      THE NATURE OF THE DEBTS WERE NOT ESTABLISHED IN DISCOVERY, AS IT IS IMPOSSIBLE FOR PRA TO KNOW THE PURPOSE FOR WHICH EACH DEBT WAS INCURRED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. It is Plaintiff's Burden to Demonstrate the Primary Purpose for which the Debts were Incurred. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. Plaintiffs Have No Evidence Concerning Whether the Debts were Incurred for Money, Property, Services, or Insurance as Required by the Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.     JOINDER IS PRACTICAL IN *ZIMMERMAN*. . . . . . . . . . . 5

    A. Judicial Economy and Geographic Dispersion of Class Members. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. Plaintiffs provide no case law to support their argument that joinder is impractical where the majority of class members live in the same state. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    C. Financial Resources of Class Members and Ability to Maintain Individual Suits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D. The Stage of the Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**Case law**

Adymy v. Erie County Child Support Enforcement Unit, 2006 U.S. Dist. LEXIS 25025, at *9 (W.D.N.Y. May 2, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Amchem Prods. v. Windsor, 521 U.S. 591 (U.S. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Anderson v. AFNI, Inc., No. 10-4064, 2011 U.S. Dist. LEXIS 51368 (E.D. Pa. May 11, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.), 672 F.3d 113, 129 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Anderson v. Granoff, Walker & Forlenza, P.C., 2012 U.S. Dist. LEXIS 64543 (S.D.N.Y. Mar. 27, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Beal v. Himmel & Bernstein, LLP, 615 F. Supp. 2d 214 (S.D.N.Y. 2009) . . . . . . . . . . . .4

Bloom v. I.C. Sys., Inc., 972 F.2d 1067 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bruce v. Christian, 113 F.R.D. 554 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. 194 (E.D.N.Y. 2005) . . 8, 9

Cuthie v. Fleet Reserve Ass'n, 743 F. Supp. 2d 486 (D. Md. 2010) . . . . . . . . . . . . . . . . 5, 6

Ernst v. Berson Assocs., No. 93-5233, 1994 U.S. Dist. LEXIS 21653 (E.D.N.Y. Aug. 15, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . 7

Gaspar v. Linvatec Corp., 167 F.R.D. 51, 57 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . 6, 8

Gortat v. Capala Bros., 2012 U.S. Dist. LEXIS 47066 (E.D.N.Y. Apr. 3, 2012) . . . . . . . 8

In re Adelphia Communs. Corp. Sec. & Derivatives Litig., 271 Fed. Appx. 41 (2d Cir. 2008)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchs. Litig.), 667 F.3d 204 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Kazarov v. Achim, 2003 U.S. Dist. LEXIS 22407 (N.D. Ill. Dec. 12, 2003) . . . . . . . . . 6, 7, 8

Langley v. Coughlin, 715 F. Supp. 522 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 9

Monaco v. Stone, 187 F.R.D. 50 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

National Union Fire Ins. Co. v. Schulman, 1990 U.S. Dist. LEXIS 10409 (S.D.N.Y. Aug. 6, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Odom v. Hazen Transp., Inc., 275 F.R.D. 400 (W.D.N.Y. 2011) . . . . . . . . . . . . . . . . . .7

Rittmaster v. PaineWebber Group (In re PaineWebber Ltd. Pshps. Litig.), 147 F.3d 132, 135 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Riviere, et al. v. Banner Chevrolet, Inc., 184 F.3d 457 (5th Cir. 1999) . . . . . . . . . . . . . 3, 4

Rosario v. Cook County, 101 F.R.D. 659 (N.D. Ill. 1983) . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Sirota v. Solitron Devices, Inc., 673 F.2d 566 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . 1

Slenk v. Transworld Sys., 236 F.3d 1072 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 3

Strykers Bay Neighborhood Council, Inc. v. City of New York, 695 F. Supp. 1531 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tower v. Moss, 625 F.2d 1161 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Util. Metal Research, Inc. v. Coleman, 2008 U.S. Dist. LEXIS 25095 (E.D.N.Y. Mar. 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Woe v. Cuomo, 729 F.2d 96 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Statutes**
15 U.S.C. § 1692a(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
15 U.S.C. § 1692k(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

**Court Rules**
Fed.R.Civ.P. 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 2

**Other**
Staff Opinion Letter of the Federal Trade Commission to Bruce A. Nants, March 1, 1989
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

**ARGUMENT**

**I. THE CLASS CONSISTS OF 19 PERSONS BECAUSE LATE OPT INS MAY NOT BE COUNTED WITHOUT A SHOWING OF EXCUSABLE NEGLECT.**

The class consists of 19 persons because late opt ins may not be counted without a showing of excusable neglect. The Second Circuit has held that a "district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1972); see also Monaco v. Stone, 187 F.R.D. 50, 59 (E.D.N.Y. 1999) ("A class may be decertified if later events demonstrate that the reasons for granting class certification no longer exist or never existed."). In Zimmerman, only 20 (including Zimmerman, the class representative) class members provided evidence that the primary purpose for which the debt was incurred was for personal, family or household use. The persons who sent opt in forms beyond the agreed upon deadline cannot be counted as class members. Additionally, class members who did not opt out but failed to submit a claim are not members of the class. Plaintiffs provide absolutely no case law showing otherwise. Nor do Plaintiffs offer any case law to support their assertion that the claim form was inadequate.

Plaintiffs who opted in past the deadline must make a motion pursuant to Fed.R.Civ.P. 6 and show the existence of excusable neglect. See In re Adelphia Communs. Corp. Sec. & Derivatives Litig., 271 Fed. Appx. 41, 43 (2d Cir. 2008) (Affirming district court's judgment that plaintiff did not demonstrate excusable neglect because, despite the fact it was aware of the settlement only one day after the opt out deadline, it still waited a full month to file its motion for an extension of time.). Fed.R.Civ.P. 6 permits a court to extend the time during which an act must be done "on motion made after the time has expired if the party failed to act because of excusable neglect." Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.), 672 F.3d

113, 129 (2d Cir. 2011) (citing Fed. R. Civ. P. 6(b)(1)(B)).  "Excusable neglect may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness . . . [where] a movant must show good faith and a reasonable basis for noncompliance." Id. at 44 (citing Rittmaster v. PaineWebber Group (In re PaineWebber Ltd. Pshps. Litig.), 147 F.3d 132, 135 (2d Cir. 1998) (internal citations omitted).

Rule 6(b)(2) permits a court to extend a class member's time for opting in beyond the deadline, and specifically provides:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Here, the deadline to submit a claim form has expired and no one has moved for an extension of time to file a late claim.

## II. THE NATURE OF THE DEBTS WERE NOT ESTABLISHED IN DISCOVERY, AS IT IS IMPOSSIBLE FOR PRA TO KNOW THE PURPOSE FOR WHICH EACH DEBT WAS INCURRED.

The nature of the class members' debts were not established in discovery, as it is impossible for PRA to know the purpose for which each debt was incurred.  Plaintiffs cite to PRA, Inc.'s 10-k filing as evidence that the debts were consumer purchases under the Act.  PRA, Inc. is an entirely separate entity from the defendant in this lawsuit, PRA, LLC.  Even if the Court were to look at a 10-k filing, once again, it would offer no guidance as it is impossible for PRA to know the purpose for which each debt was incurred.  PRA Inc. is not a defendant in this lawsuit, and Plaintiffs offer no evidence as to whether PRA Inc. purchased or owed any class members' debt.  Nor do Plaintiffs offer an explanation of what relationship PRA, Inc. has to the

class.  Within this circuit, it is the consumer's purpose for incurring the debt that is paramount, not how the debt collector classifies the debt. See Util. Metal Research, Inc. v. Coleman, 2008 U.S. Dist. LEXIS 25095 (E.D.N.Y. Mar. 28, 2008) (citing Ernst v. Berson Assocs., No. 93-5233, 1994 U.S. Dist. LEXIS 21653, at * 5-6 (E.D.N.Y. Aug. 15, 1994)) ("'To determine whether a debt is commercial or personal in nature, the consumer's purpose in making the transaction is of paramount interest to the Court.'").

**A. It is Plaintiff's Burden to Demonstrate the Primary Purpose for which the Debts were Incurred.**

Within the Second Circuit, to sustain a claim under the FDCPA, it is the Plaintiff's burden to demonstrate the alleged debt falls within the meaning of §1692a(5). See, e.g., Adymy v. Erie County Child Support Enforcement Unit, 2006 U.S. Dist. LEXIS 25025, at *9 (W.D.N.Y. May 2, 2006) ("In order to prevail in an FDCPA cause of action, plaintiffs must establish that the alleged 'debt' is covered by the Act.").  In determining whether a "debt" falls within the purview of the FDCPA, courts will "examine the transaction as a whole," with particular attention to "the *purpose* for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature." Bloom v. I.C. Sys., Inc., 972 F.2d 1067, 1068 (9th Cir. 1992) (emphasis added) (citing Tower v. Moss, 625 F.2d 1161, 1166 (5th Cir. 1980)).  This determination necessarily means that the "substance" of the transaction is elevated over the form and the borrower's purpose for the loan becomes dispositive.  Under this analysis, the purpose a debt was incurred is not determined by what was purchased, where it was purchased or the creditor's or debt collector's treatment of the debt.  Rather, the obligor's subjective reasons for incurring the debt determine its purpose. Slenk v. Transworld Sys., 236 F.3d 1072, 1075 (9th Cir. 2001); Riviere, et al. v. Banner Chevrolet, Inc., 184 F.3d 457, 462 (5th Cir. 1999) ("That the

documents relevant to this transaction label it as 'consumer' is not dispositive."); Anderson v. AFNI, Inc., No. 10-4064, 2011 U.S. Dist. LEXIS 51368, **38-39 (E.D. Pa. May 11, 2011) ("[Defendant] may have in an abundance of caution treated [plaintiff's] obligations as consumer debts to protect itself from FDCPA liability [however] . . . a debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of that obligation itself.").

### B. Plaintiffs Have No Evidence Concerning Whether the Debts were Incurred for Money, Property, Services, or Insurance as Required by the Act.

The only evidence regarding the nature of the debts was provided by Zimmerman and the class members who timely returned their claim forms.  The remaining Plaintiffs have no evidence concerning whether the debts were incurred for money, property, services, or insurance as required by the Act. See, e.g., National Union Fire Ins. Co. v. Schulman, 1990 U.S. Dist. LEXIS 10409 (S.D.N.Y. Aug. 6, 1990) ("The promissory notes signed by Schulman are not a 'debt' within the meaning of section 1692(a)(5) of the FDCPA, which defines a debt as 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services' . . . . "); Beal v. Himmel & Bernstein, LLP, 615 F. Supp. 2d 214, 216 (S.D.N.Y. 2009); Anderson v. Granoff, Walker & Forlenza, P.C., 2012 U.S. Dist. LEXIS 64543 (S.D.N.Y. Mar. 27, 2012).

Where a debt consists of multiple transactions, *each* transaction must be examined separately to determine which, if any, fall within the meaning of 15 U.S.C. § 1692a(5). Staff Opinion Letter of the Federal Trade Commission to Bruce A. Nants, March 1, 1989 (the "Nants Letter") attached hereto as Ex. "A" and publically available at http://www.ftc.gov/os/statutes/fdcpa/letters/nants2.htm.  The Federal Trade Commission (the "FTC") has statutory authority to issue advisory opinions related to the FDCPA. 15 U.S.C. §

4

1692k(e); Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605, 1621 (2010). In the Nants Letter, the FTC provided the following guidance in determining whether multiple transactions constitute "debt" within the meaning of the FDCPA has opined:

> Purchases made on credit card accounts may involve debts that are and are not covered by the Act. Each credit card transaction constitutes a separate and distinct item for purposes of the Act. Thus, rather than considering the account as a whole, we would look to each transaction to determine whether related debts are subject to the Act. However, we acknowledge that it may be impractical for an attorney suing to collect delinquent balances on a credit card account to distinguish between those debts that are subject to the Act and those that are not.

Staff Opinion Letter of the Federal Trade Commission to Bruce A. Nants, Ex. "A."

### III. JOINDER IS PRACTICAL IN *ZIMMERMAN*.

**A.   Judicial Economy and Geographic Dispersion of Class Members.**

Plaintiffs misleadingly cite to Bruce v. Christian, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) for support that a class of 16 can be certified. In Bruce, the court stated, "While plaintiff thus far has identified only 16 cases which support her claims, it is clear that the conduct complained of affects or will affect numerous individuals whose joinder is impracticable." In Bruce, the court was confident that many more than 16 people would be class members. Id. In contrast, in Zimmerman it is clear that only 20 are class members because the time period for which plaintiffs can opt in has passed. See id.

Additionally, Cuthie v. Fleet Reserve Ass'n, 743 F. Supp. 2d 486, 498 (D. Md. 2010), cited by Plaintiffs, actually supports PRA's argument that numerosity is not met. In Cuthie, the court's main reason for finding numerosity was the fact that most of the class members would fear retaliation from their employer if they joined the case, rather than participating as class members. See id. The court specifically stated that "[t]he fear of retaliation may be an

5

impediment to joinder and a basis for small employee classes." Id.  Retaliation is not an issue in Zimmerman and thus Cuthie provides no support for Plaintiffs' argument.

Finally, in Kazarov v. Achim, 2003 U.S. Dist. LEXIS 22407, *6 (N.D. Ill. Dec. 12, 2003), the potential class members were all illegal aliens, three of which had been removed from the United States.  Moreover, the identity of most of the class members was unknown. Id. at *18.  The court commented that "since the challenged ICE practice continues, the class may grow and change as more individuals are detained by the Chicago District in excess of six months after a final order of removal has been issued." Id.  In contrast, in Zimmerman the class has no potential to grow. See id.  Moreover, the "potential class members [in Kazarov were] immigrants, incarcerated, likely indigent, and many do not speak English, thus hindering their ability to join this lawsuit." Id.  In Zimmerman, there is no evidence that any of the class members are immigrants, incarcerated, likely indigent or non-English speaking. See id.  Finally, in Kazarov, joinder was impractical because class members were "geographically dispersed in various jails throughout Illinois and adjoining states." Id. at *19.  While class members in Zimmerman are dispersed throughout the state, with two out of state, none are alleged to be in jail. See id.  Thus, joinder is practical in Zimmerman whereas it was impractical in Kazarov.

Plaintiff also cites to Gaspar v. Linvatec Corp., 167 F.R.D. 51, 57 (N.D. Ill. 1996) in support of his numerosity argument.  In Gaspar, the class members were "geographically dispersed between Illinois, New Jersey, and Tennessee." Id.  In contrast, in Zimmerman the *majority* of class members are located in New York, with only two in different states.  Moreover, Gaspar is neither binding nor persuasive as it is an out of state, district court decision. In Rosario v. Cook County, 101 F.R.D. 659, 661 (N.D. Ill. 1983), joinder was impractical because the employees would likely fear retaliation from their employer. Id. at 662.  The court

also noted the difficulty of having twenty employees exhaust the EEOC procedures.  Id.   In Zimmerman there is no fear of employer retaliation nor any burdensome administrative procedures the plaintiffs need to complete.  See id.  Finally, Rosario is neither persuasive nor binding because it is an out of state district court decision.

In Odom v. Hazen Transp., Inc., 275 F.R.D. 400, 407 (W.D.N.Y. 2011), class certification was granted because "[t]he small recoveries that many of the class members could reasonably expect to recover even if they prevailed on the merits makes it unlikely that, absent the benefit of class representation, they would choose to bear the costs of individual lawsuits." (citation omitted).  The claims were brought pursuant to the Fair Labor Standards Act and the New York Labor Law.  The class members in Zimmerman do not face this problem, because the FDCPA is a fee shifting statute.  The same analysis applies to Frank v. Eastman Kodak Co., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (certifying class of 28 employees in FLSA action where small potential recoveries by plaintiffs made individual suits unlikely).

Finally, Plaintiffs misleadingly state that the issues would have to be re-litigated.  Rather, the parties would simply be joined in Zimmerman's present suit.

**B. Plaintiffs provide no case law to support their argument that joinder is impractical where the majority of class members live in the same state.**

While Plaintiffs cite to Strykers Bay Neighborhood Council, Inc. v. City of New York, 695 F. Supp. 1531, 1538 (S.D.N.Y. 1988) for the proposition that class members who live in or near the same district are likely candidates for joinder, the case does not make any comment on cases where the majority of plaintiffs live in the same state.  Plaintiff provides no case law to show that joinder is impractical where the majority of plaintiffs live in the same state.

In Kazarov, the potential class members were all illegal aliens, three of which had been

removed from the United States. 2003 U.S. Dist. LEXIS 22407, *6.  In that case the identity of most of the class members was unknown. Id. at *18 (emphasis added).  The court noted that "since the challenged ICE practice continues, the class may grow and change as more individuals are detained by the Chicago District in excess of six months after a final order of removal has been issued." Id.  Unlike Kazarov, the majority of the Zimmerman class members live in the same state, and the identity of the class members is known.  Similarly, in Gaspar, the class members were dispersed throughout three states, whereas the majority of class members in Zimmerman reside in the same state. 167 F.R.D. at 57.

In Gortat v. Capala Bros., 2012 U.S. Dist. LEXIS 47066, at *13 (E.D.N.Y. Apr. 3, 2012), "the class members [were] immigrant laborers who sp[oke] little English."  There is no evidence that the Zimmerman class members are immigrant laborers who speak little English. See id.  Moreover, the Gortat plaintiffs' claims were brought pursuant to New York Labor Law, Fair Labor Standards Act, and Portal-to-Portal Act, none of which are fee-shifting statutes like the FDCPA. See id.  In fact, the court stated that, "'A class action solves [the problem that small recoveries do not provide the incentive for any individual to bring a solo action] by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'" Id. (citation omitted).  The FDCPA provides a successful plaintiff with attorney's fees, so the concerns addressed by the Gortat court are moot in Zimmerman.

**C.  Financial Resources of Class Members and Ability to Maintain Individual Suits.**

The class members in Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. 194, 204 (E.D.N.Y. 2005) were mentally disabled and thus less able to maintain their own claims.  Additionally, it would be unlikely that the class members would "serve as named plaintiffs in an

8

action against the home where they live for fear of reprisals." Id. In Zimmerman there is no evidence that the class members are mentally disabled or would fear any type of reprisal for joining in the suit individually. See id. Finally, the class size exceeded 150 and the relief requested was injunctive in nature, which tilted the case in favor of satisfying numerosity. Id. at 205. Amchem Prods. v. Windsor, 521 U.S. 591, 600 (U.S. 1997) involved asbestos litigation which does not provide a successful plaintiff with fees, contrary to the FDCPA, the claim upon which the Zimmerman suit is based. Similarly, Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchs. Litig.), 667 F.3d 204, 208 (2d Cir. 2012) involved claims based on the Sherman Act which has no fee shifting provision.

### D. The Stage of the Litigation.

Plaintiffs fail to state how exactly the class members would be prejudiced by decertification at this stage of the litigation. While Langley v. Coughlin, 715 F. Supp. 522, 553 (S.D.N.Y. 1989) did consider the late stage of litigation as a factor, the other factors clearly were in favor of class certification, which is not the case in Zimmerman. For example the class was composed of 250 inmates. The Zimmerman class members are not inmates (inmates would have a hard time maintaining an individual suit), and the class size is only 20, which is minute in comparison to 250. See id. In Woe v. Cuomo, 729 F.2d 96, 99 (2d Cir. 1984), where the court refused to decertify the class, the litigation had been ongoing for nine years, whereas Zimmerman has only been pending for three years. Moreover, that case dealt with class members who were mentally ill individuals and who thus may have difficulty bringing an individual suit. See id.

**CONCLUSION**

Accordingly, Portfolio Recovery Associates, LLC respectfully requests that the Court decertify the class.

/s/ *Rachel Marin*
Rachel Marin, Esq.
Donald S. Maurice, Esq.
Maurice & Needleman, P.C.
Attorneys for
Portfolio Recovery Associates, LLC
5 Walter E. Foran Blvd.
Ste 2007
Flemington, NJ 08822
(908) 237-4550
rmarin@mnlawpc.com

September 10, 2012