UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON ZIMMERMAN, on behalf of himself and all others similarly situated, | ) ) ) Civil Action No. 7:09-cv-04602 |
| Plaintiff, | ) ) ) |
| -against- | ) ) |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF SUPPLEMENTAL BRIEFING IN SUPPORT OF AN AWARD OF CLASS DAMAGES**

Plaintiff, Jason Zimmerman, submits his reply in further support of supplemental briefing on damages.

## ARGUMENT

### I  FDCPA CLASS DAMAGES ARE CAPPED ONLY BY THE $500,000/ONE PERCENT LIMITATION AND THE FACTORS OUTLINED IN § 1692k(a)(2)(B)

A plain reading of Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692k(a)(2)(B)(ii) provides that the *sole cap* to class action statutory damages is "$500,000 or 1 per centum of the net worth of the debt collector." In *McCall v. Drive Fin. Services, L.P.*, 440 F. Supp. 2d 388, 390 (E.D. Pa. 2006), the only case Plaintiff's counsel has found directly and comprehensively addressing the issue of FDCPA class statutory damages, the Court found that to determine a class award the court "must consider the factors set forth in paragraph (b)(2) [frequency and persistence of noncompliance, nature of such noncompliance etc.]" but "[t]hese factors do not address the amount an individual class member may recover."

What individual class members may recover is a function only of the number of people in the class. As § 1692k(a)(2)(B) instructs, the statutory award is for "all other class members" who take their pro-rata share of the award. If there are 100,000 members in a class they could recover at most $5. If there are 20 members they could recover $25,000. The range of outcomes is entirely appropriate because the focus of *class* damages is on punishing the debt collector for engaging in illegal conduct as to an entire class of consumers rather than one isolated person.

Neither Plaintiff nor Defense counsel has found any cases that *impose* a statutory cap of $1,000.00 per class member. In fact, the cases suggest the opposite with both *McCall* and *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 507 (N.D. Ill.

1

2001) setting damages based on the § 1692k(b)(2) factors only.  Individual maximums or minimums are not addressed for the clear reason they are not permissible factors.[1]

### A. The Congressional Record Shows the Only Cap for Class Damages is $500,000 or One Percent of Net Worth Without Regard to Individual Recovery

The Senate Report accompanying passage of the FDCPA is clear and buttresses the *McCall* approach: class damages are separate and apart from damages in an individual action:

> Section 813. Civil liability.
>
> A debt collector who violates the Act is liable for actual damages plus costs and reasonable attorney's fees. The court may award additional damages of up to $1,000 in individual actions, and in class actions, up to $500,000 or 1 percent of the debt collector's net worth, whichever is less.

S. Rep. No. 382, S. REP. 95-382, 8, 1977 U.S.C.C.A.N. 1695, 1702.  Defendant Portfolio Recovery Associates ("PRA") confusingly quoted only the Report's introductory civil liability discussion which does not address class actions. (*See* PRA Opp Brief (Docket #76), pg. 3).  PRA ignores the Report's section-by-section summary and the more detailed discussion of Section 813 (§1692k).  Read in full, the Report in no way limits all individuals' recovery in all instances to $1,000.00.  Rather the Report shows a two tiered statutory damages approach: 1k max in an individual action, 500k max in a class action.

### B. None of the Cases Cited by PRA Support a $1,000 Cap for Individual Class Members

None of the cases cited by PRA stand for the proposition that § 1692k(a)(2)(B) limits class members' recovery to $1,000 in statutory damages.

In *Thomas v. NCO Fin. Sys., Inc.*, 2002 WL 1773035 (E.D. Pa. July 31, 2002) the court approved a class action settlement agreement involving 2.2 million class members.  There was no thorough analysis of maximum or minimum class damages nor were the issues contested.

---

[1] As the court in *Miller* correctly identified the inquiry: "In determining a damages award, I am to consider [the § 1692k(b)(2) factors]." 198 F.R.D. at 507.

PRA's quotation to the case is from a brief footnote which contains *Thomas*' entire reference to class damages.

PRA quotes another sparse footnote in *Tenuto v. Transworld Sys., Inc.*, 2000 WL 1470213 (E.D. Pa. Sept. 29, 2000) which is also the entirety of that court's discussion on class damages. As in *Thomas* and *Brink* below, the *Tenuto* court was not ruling on class damages and the cited portion was *dicta*.

In *Brink v. First Credit Res.*, 185 F.R.D. 567, 572-73 (D. Ariz. 1999) the court was not leveling damages in any respect. In fact, on a class certification motion, it was concerned that a nationwide class would result in less recovery than a class of just 395 Arizonians (same size pie but more slices). The nationwide class posed superiority problems under Fed. R. Civ. P. 23(b)(3) because the lower individual class recovery ($2.00) would not justify the "cost of notifying and distributing damages." *Id.*

PRA also cites to the Electronic Funds Transfer Act, ("EFTA"), 15 U.S.C. § 1693, *et seq.*, and cases decided thereunder. Contrary to PRA's suggestion, courts do not hold that the EFTA's class damages provision limits class member's recovery to $1,000. The court in *Ballard v. Branch Banking & Trust Co.*, 2012 WL 2089053 (D.D.C. June 11, 2012), did not rule that class members were bound by the EFTA's individual recovery limit. The court was rejecting the plaintiff's rosy assumption that he could recover the maximum award of $500,000 or 1% given the facts of the case. *Id*. at *6. The court was also considering and denying class certification rather than any apportionment of damages. Likewise *Kinder v. First S. Nat. Bank*, 2011 WL 5975564 (E.D. Ky. Nov. 29, 2011) made no holdings on class damages, did not discuss them in any great detail and merely paraphrased § 1693m(a)(2)(B). *Id*. at *1. *Kinder's* brief discussion, as with *Ballard*, *Brink*, *Tuento* and *Thomas* is *dicta* and unpersuasive.

Plaintiff's counsel has searched for more EFTA cases which may aid this Court. However, that statute is not heavily litigated and no decisions were found actually grappling with class damages under that act.

### C. A Plain Reading of the Statute Shows Only a $500,000/One Percent Cap For Class Actions

PRA dedicates significant space in its brief describing its "plain reading" of the class damages provision. Plain readings should not require much exposition. An actual plain reading of § 1692k(a)(2)(A), § 1692k(a)(2)(B)(i) and § 1692k(a)(2)(B)(ii) shows two sections with a $1,000 cap ((2)(A) & (B)(i)) and one section without ((B)(ii)).[2]

In (B)(i), Congress cited and included the limitation in "subparagraph (A)." Named class plaintiff's are therefore permitted and limited to their regular damages just as if the class did not exist.

In (B)(ii), Congress omitted the same language. It could very easily have put it in but did not. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Gonzales*, 520 U.S. 1, 5, 117 S. Ct. 1032, 137 L. Ed. 2d 132 (1997) (internal citation omitted). The statute therefore means

---

[2] (a) Amount of damages
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
> (1) any actual damage sustained by such person as a result of such failure;
> (2)
>> (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
>> (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector

15 U.S.C. § 1692k(a)

exactly as it states: the only cap on class damages is $500,000 or 1 per centum of the collector's net worth.

This result is not absurd in any respect. It is borne out by an equally plain reading of the Senate Report discussed *supra*. It is the conclusion reached by the one judge that has tackled the issue in depth in *McCall*. It also is entirely in line with what the purpose behind the class action device and the very nature of class claims – to deter serial abusers. H. NEWBERG, CLASS ACTIONS § 4.36.

### D. "Without Regard to a Minimum Individual Recovery" Evidences Individual Recovery is Not a Factor in Assessing Class Damages

Section 1692k(a)(2)(B)(ii)'s inclusion of "without regard to a minimum individual recovery" means just as it says and Plaintiff offers no contrary interpretation. Class damages are calculated by the Court for all class members without regard to the minimum any particular person may receive. This buttresses Plaintiff's point: the Act does not identify individual recovery as a factor in assessing class damages. The only permissible considerations for the Court in determining what number between $0 and $500,000 to set for class damages are the "Factors considered by court" found in 1692k(b)(2).

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 2012 WL 3538269 (2d Cir. 2012) is not relevant to this question nor does it support a result at odds with the Senate Report or *McCall*. In *Hecht*, the Court was faced with a class member who would receive less than $1,000 had they participated in the class. Whether a class member could receive more than $1,000 was not an issue or addressed. Furthermore, the Second Circuit's noted the Act allowed "a single claimant up to $1000 in statutory damages . . . *but* allows unnamed class members, *in the aggregate*," the lesser of $500,000 or 1 per centum of the net worth. 2012 WL 3538269 at *6. The Court recognized the "contrasting" outcomes in individual versus class cases.

5

*McCall* is the only case that addresses the issue of damages in an FDCPA class action head on and it found that there is "no statutorily dictated maximum per [recovery class] member" and "15 U.S.C. § 1692k(a) *does not* limit the share of the award to be received by each class member to $1,000." 440 F. Supp. 2d at 390-91. Class damages are determined by looking to § 1692k(b)(2) only. *Miller*, 198 F.R.D. at 507. And in this case, where PRA intentionally violated the FDCPA to save itself money, a maximum statutory award is warranted.

## II  PRA'S VIOLATIONS OF THE FDCPA WERE FREQUENT AND PERSISTENT

If frequency and persistence is to have any meaning in the context of FDCPA class actions it must mean more than counting the number of non-complaint actions directed to a specific individual. It must mean how persistent and frequent where the debt collector's violations *in toto*.

Class actions, and FDCPA class actions dealing with illegal letters in particular, address the ill of "standardized conduct towards members of [a] proposed class." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (standardized conduct of towards the class of "mailing to them allegedly illegal form letters or documents"); *Gonzales v. Arrow Fin. Services, LLC,* 233 F.R.D. 577, 582 (S.D. Cal. 2006) (same, finding common questions due to standardized conduct of illegal letters); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 50 (D. Conn. 2000) (same). In the context of standard actions towards a class, "frequent and persistent" has two logical applications: either 1) the debt collector performed *one illegal action, on one occasion,* which violated numerous people's rights; or 2) the debt collector performed *an illegal action, over and over*, serially violating people's rights.

Under the first application, standardized conduct is directed to the class but is not frequent or persistent. For instance, a debt collector could publicize a list of consumers that owed debt. *See* 15 U.S.C. § 1692d(3). Each consumer would be similarly affected by the single

6

action which violated their privacy rights. However, the debt collector's single action would not be frequent as it happened just once nor be persistent presuming it did not do it again.

Under the second application, a debt collector, like PRA here, could use an illegal package of documents simulating legal process as part of its standard operating procedure. Each time the package was sent a new violation occurs. Each consumer would be similarly affected but by multiple and repeated actions on the part of PRA, rather than one single event. In this scenario, PRA's violation was frequent - it sent these illegal packages out over and over. PRA's violation was also persistent – it had *an entire department,* the "litigation department," whose sole written communication with consumers was the "Pre-Suit Package."

PRA states that only one court has addressed this issue in the context of class actions, *Jerman v. Carlisle et al.*, 2011 WL 1434679 (N.D. Ohio, April 14, 2011). First, as set forth in Plaintiff's opening supplemental brief, Plaintiff does not believe that the unpublished *Jerman* decision is persuasive. Second, *Jerman* is not the only case addressing the issue. In *Miller* the court succinctly held:

> The noncompliance here involved thousands of individual violations over several years: it was frequent and persistent.

198 F.R.D. at 507. There as here, *Miller* involved a form document sent over and over. There as here, the debt collector's actions were frequent and persistent.

### III **PRA'S VIOLATIONS OF THE FDCPA WERE EGREGIOUS**[3]

As set forth in the introduction of Plaintiff's supplemental brief, one of the "needs" for the FDCPA identified by Congress was to stop collector abuse, "harassment and deception" such

---

[3] PRA cites several additional cases for the proposition that's its actions were not egregious and also argues Plaintiff "misleading characterizes" several cases concerning letter violations. (Docket #76, pp 8-12, Sections II(B) – II(C)). These arguments do not fit neatly into the topics the Court wished addressed in supplemental briefing. Plaintiff addresses these arguments in this separate section to mirror, in part, PRA's brief.

as the practice of sending consumers "phony legal documents" as PRA used here. H.R. REP. NO. 95–131, p. 2 (1977); *see also* S. REP. NO. 95–382, p. 1 (1977) (singling out "simulated legal process" along with obscene or profane language, threats of violence and impersonating public officials as justifying the new consumer protections).  This Court has already recognized that the blatant nature of the violation shows PRA acted intentionally.  Moreover, PRA did it to save money and avoid the time and effort to file actual suit. (Mesisco Dep. 82:19-20).  If anything constitutes an egregious violation of the FDCPA it must be an intentional violation, done to save the collector money, in an area specifically highlighted by Congress as an abusive and harassing practice.

      PRA cites to *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989), a non-class action, and argues that the Court did not grant additional damages "in part because there was a weak showing of frequency and persistence." (Docket #76, p. 9).  First, the Court found that the collector "did not intend to deceive or harass" the consumer.  That is not the case here where PRA intended to violate the Act through simulated process.  Second, the Second Circuit denied statutory damages because "there is no contention that the Bureau has frequently or persistently *violated the Act*."  But here the evidence shows PRA was frequently and persistently violating the Act.

      Similarly in *Anderson v. Frederick J. Hanna & Associates*, 361 F. Supp. 2d 1379, 1384 (N.D. Ga. 2005), another individual action, there was no evidence of intentional conduct.  In fact the court believed it was an "isolated and *inadvertent*" violation therefore not frequent or persistent.  That is not the case here.

      PRA misreads *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200 (E.D.N.Y. 2009).  On a motion for default judgment, Plaintiff won 1 of his claims (under

§ 1692g(a)(4)), not 5 as PRA states. (Docket #76, p. 9).  The g(a)(4) violation occurred when the collector's letter failed to inform plaintiff that disputes had to be in writing.  There were "no allegations" that the single violation was either intentional or persistent and frequent. 655 F. Supp 2d at 210. Even still, the Court found 50% of the maximum available damages was appropriate and "in line" with other cases.

PRA cites *In re Scrimpsher*, 17 B.R. 999, 1016 (Bankr. N.D.N.Y. 1982), an older bankruptcy case involving a single claimant.  The case is not persuasive where the violations were of the less egregious type the FDCPA sought to address unlike here where the issues is multiple uses of simulated legal process.

PRA takes issue with Plaintiff's analysis of *Clomon v. Jackson* and *Savino v. Computer Credit.*  However here, as in *Clomon*, the language of the statue is clear as day that the FDCPA prohibits simulated legal process.  The *Clomon* Court specifically upheld the maximum statutory award because the debt collector "knew or should have known that these collection letters" were illegal. 988 F.2d 1314, 1322-23 (2d Cir. 1993).  PRA's extensive legal department should have known the same.  And unlike the present case, in *Savino* there was no evidence of intentional conduct whatsoever and the letter was not threatening.  Yet the Court still approved 50% of the maximum award available in a single action. 164 F.3d 81, 86 (2d Cir. 1998).

## IV    EACH CLASS MEMBER WAS ADVERSELY AFFECTED

PRA cites only the unpublished decision *Jerman* to argue that actual damages are required to be adversely affected.  As noted, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Gonzales*, 520 U.S. at 5.  The FDCPA has an actual damages provision. *See* 15 U.S.C. § 1692(a)(1).  If Congress intended class action *statutory* damages to reflect actual damages in any

9

respect it could have included the phrase "actual damages" along with the other §1692k(b)(2) factors.  Congress did not.  Therefore the logical interpretation of "adversely affected" is that adopted by the Court in *Miller*, it means those sent the illegal communication. 198 F.R.D. at 507 ("There were around 9,000 persons adversely affected").  In this case, PRA not only sent the Pre-Suit Package to consumers in New York, but admitted to using the same tactics in other states. (Hedgeman Dep. 26:11-15; 83:13-18).

**V        RE-NOTIFICATION IS ENTIRELY APPROPRIATE**

There was a low response to the class notice.  Plaintiff's counsel believes the requirements of the notice (asking consumers to recall the specific debts PRA was collecting years after the fact and instructing them to provide documents for the same) proved too burdensome for these individuals.  As set forth in and pursuant to Plaintiff's opening brief, re-notification to the class is appropriate once the Court sets the damages figure.

However, Plaintiff believes the issue of the nature of the debts is a red herring. Peculiarly, PRA already possesses the account statements it wanted these individuals to produce (Hedge Dep. 139-140) but has not produced *a single one* to show that any account was incurred for business purposes.  Moreover, PRA admitted in discovery that it only collected FDCPA debts.  No contrary evidence has been presented just unsupported conjecture. With PRA's binding Fed. R. Civ. P. 36 admissions, all 990 class members could meet their burden on a summary judgment motion that PRA was collecting an FDCPA debt as to them.  PRA, to this day, has offered nothing to prove otherwise.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests the Court grant his Request for Relief as stated in his opening supplemental brief in support of damages.

Dated: September 24, 2012

                                        Respectfully submitted,

                                      By     /s/ Sergei Lemberg
                                              Sergei Lemberg
                                              LEMBERG & ASSOCIATES L.L.C.
                                              1100 Summer Street, 3rd Floor
                                              Stamford, CT 06905
                                              Telephone: (203) 653-2250
                                              Facsimile:  (877) 795-3666
                                              *Counsel to Plaintiff and the Class*

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on September 24, 2012, a copy of the forgoing was filed via the ECF system for the Southern District of New York, which sent notice of such filing to the following:

Don Maurice, Esq.
Maurice & Needleman, P.C.
5 Walter E. Foran Blvd., Suite 2007
Flemington, NJ 08822

                                                                 /s/ Sergei Lemberg
                                                                 Sergei Lemberg, Esq.