UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON ZIMMERMAN,

                    Plaintiff,

          -against-

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>March 27, 2013</u>

**MEMORANDUM
<u>OPINION & ORDER</u>**

09 Civ. 4602 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          On September 15, 2011, this Court granted Plaintiff Jason Zimmerman's motion

for summary judgment and class certification, holding that Defendant Portfolio Recovery

Associates, LLC ("PRA") had violated the Fair Debt Collection Practices Act ("FDCPA" or the

"Act") by sending a "Pre-Suit Package" to Zimmerman and other debtors. <u>Zimmerman v.

Portfolio Recovery Assoc.</u>, 276 F.R.D. 174 (S.D.N.Y. 2011). Defendant has requested

reconsideration of that portion of the September 15, 2011 order granting class certification.

(Dkt. No. 66) Also pending before the Court is Plaintiff's motion for statutory damages pursuant

to the FDCPA. (Dkt. No. 54) For the reasons stated below, Defendant's motion for

reconsideration will be denied and Plaintiff's motion for statutory damages will be granted.

<u>**BACKGROUND**</u>[1]

          In granting Zimmerman's motion for summary judgment, this Court found that

that PRA had violated the FDCPA by distributing a "Pre-Suit Package" – debt collection

documents simulating official court papers – to debtors. <u>Zimmerman</u>, 276 F.R.D. at 179. The

---

[1] Familiarity with this Court's prior orders in this action is presumed, and the Court sets forth
only a summary of the facts and rulings most pertinent to the instant motions.

Court determined that the "least sophisticated consumer might well conclude that Defendant had initiated a lawsuit to collect the debt." Id.  The Court also granted Zimmerman's motion for certification of a class of approximately 990 people, comprised of "all consumers to whom the Defendant sent, within one year of the commencement of this action, a demand for payment letter on Portfolio Recovery Associates, LLC letterhead – signed by Catherine M. Hedgeman, Esq. – and enclosing a draft summons and complaint in a form materially identical or substantially similar to the 'Pre-Suit Package' sent to Jason P. Zimmerman, and which was not returned as undeliverable by the Postal Service." Id. at 180-81.

After the Court's decision, a class action administrator sent all class members a Class Notice with an attached Claim Form.  (Apr. 23, 2012 Lemberg Decl. ¶ 7)  The Class Notice instructed recipients:  "If you wish to participate in class recovery complete and return the attached 'Claim Form' to remain a member of the Class."  (Id. at Ex. F)  The Claim Form further directed those recipients who wished to participate in the class recovery to attach documentation or include a brief explanation of the type of debt PRA had attempted to collect from them.[2] Those recipients who wished to be excluded from the class were instructed to complete and return the "Request to be Excluded as a Class Member" portion of the Claim Form.  (Id.)  The

---

[2]  Pursuant to the Court's January 27, 2013 order, the Claim Form states:

> Attach a copy of an account statement, receipt, invoice, canceled check, or other documentation concerning any debt you believe Portfolio Recovery Associates, LLC ("PRA") attempted to collect from you.  If you do not have any such documents, then provide a brief explanation of the debt which you believe PRA attempted to collect from you, and include the following information:  (1) the type of debt (e.g., a credit card, an automobile loan, a loan for medical services, or a business loan); (2) a description of the money, property, services, or insurance that debt was used to acquire; and (3) whether the money, property, services, or insurance was acquired primarily for personal, family, or household purposes or for a business purpose.

(Jan. 27, 2013 order (Dkt. No. 53); see also Apr. 23, 2012 Lemberg Decl., Ex. F)

Class Notice informed recipients:  "Unless you exclude yourself from the Class, you will be considered a member of the Class. . . ."  (Id.)  Defendant did not object to this aspect of the Class Notice.  (See Nov. 7, 2011 order (Dkt. No. 51) (addressing Defendant's objections to Class Notice))

Thirty-three individuals returned claim forms.  (See Apr. 23, 2012 Lemberg Decl., Exs. G, H, I, J; July 12, 2012 Lemberg Decl., Ex. D)  Four individuals returned only the "Request to be Excluded as a Class Member" portion of the form.[3]  (Apr. 23, 2012 Lemberg Decl., Ex. G)  Fourteen individuals timely returned the portion of the form requesting information about their debts and provided sufficient information for the Court to determine that the debts were incurred for personal, family, or household purposes.[4]  (See id., Exs. I, J; July 12, 2012 Lemberg Decl., Ex. D)  Two individuals timely returned both portions of the claim form, but provided sufficient information for the Court to determine that they wished to remain in the class and that their debts were non-commercial in nature.[5]  (See Apr. 23, 2012 Lemberg Decl., Exs. H, I)  The remaining 13 individuals completed either both portions of the form, or only the portion of the form asking for a description of the debts, without providing sufficient information for the Court to determine that their debts were non-commercial.[6]  (See id. Exs. I, J; July 12, 2012 Lemberg Decl., Ex. D)  Eight of these 13 individuals submitted supplemental letters to clarify that they wished to be included in the class and/or clarifying that their debts were non-commercial, but those letters were submitted after the due date stated on the Claim Form.[7]  (See

---

[3]  These individuals are Bratosh, Chandler, Gage, and Powell.
[4]  These individuals are Cathcart, Hinkley, Johnson, Judson, Kane, Kavulich, Mundell, Schatt, Simmons, Smith, Spencer, Swygert, Tortorili, and Walters.
[5]  These individuals are Burgos and Sotto.
[6]  These individuals are Brown, Cox, Fadden,  Ford, Haggerty, Hatzialexandr, Hinds, Jones, Moore, Morrison, Panarella, Thomas, and Webber.
[7]  These individuals are Brown, Cox, Ford, Jones, Moore, Morrison, Panarella, and Thomas.

Apr. 23, 2012 Lemberg Decl., Exs. I, J; July 12, 2012 Lemberg Decl., Ex. D)  The parties have

not explained the process whereby some claimants were contacted and given the opportunity to

submit supplemental information about their claims.

On April 23, 2012, Plaintiff moved for an award of statutory damages under the

FDCPA.  (Dkt. No. 54)  After the motion was fully briefed, the Court held a hearing on June 26,

2012.  (Dkt. No. 72 (Transcript))  Following the hearing, the parties submitted supplemental

briefing.  (Dkt. Nos. 74, 76, 78)

On June 26, 2012, Defendant moved for reconsideration of that portion of the

Court's September 15, 2011 order granting class certification, arguing that the numerosity

requirement of Fed. R. Civ. P. 23(a) is not met by a class of 19 members.  (Dkt. Nos. 65, 66)

Plaintiff filed opposition papers on July 12, 2012 (Dkt. Nos. 69, 70), and Defendant filed a reply

on September 10, 2012.[8]  (Dkt. No. 75)

## DISCUSSION

## I.      THE CLASS WILL NOT BE DECERTIFIED

### A.      Legal Standard

Pursuant to Fed. R. Civ. P. 23, "an order that grants or denies class certification

may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1).  The Second Circuit

has interpreted this Rule to "require[ district courts] to reassess their class rulings as the case

develops."  Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir. 1999) (internal quotation

omitted).  Thus, a "'district court may decertify a class if it appears that the requirements of Rule

---

[8]  In a September 13, 2012 letter, Plaintiff asks the Court to strike Defendant's reply brief,
because it was filed nearly two months late.  (Sept. 13, 2012 Pltf. Ltr.)  The content of
Defendant's reply brief has not influenced the outcome here.

23 are not in fact met.'"  Jermyn v. Best Buy Stores, 276 F.R.D. 167, 168 (S.D.N.Y. 2011)

(quoting Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982)).

> "Decertification of a class requires a court to ask the same questions as on the original motion:  does the certified class, in fact, meet the requirements of Rule 23 by a preponderance of the evidence."  Wu v. Pearson Educ. Inc., No. 09 Civ. 6557 (KBF), 2012 WL 6681701, at *5 (S.D.N.Y. Dec. 21, 2012).  However, "[a] defendant seeking to decertify a class 'bear[s] a heavy burden to prove the necessity of . . . the drastic step of decertification. . . .'"  Id. (quoting Gordon v. Hunt, 117 F.R.D. 58, 61 (S.D.N.Y. 1987)).  "[T]he Court may not disturb its prior [certification] findings absent 'some significant intervening event,' or 'a showing of compelling reasons to reexamine the question.'"  Jermyn, 276 F.R.D. at 168-69 (quoting Doe v. Karadzic, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000)).  Compelling reasons "include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Karadzic, 192 F.R.D. at 137 (internal quotation omitted).

> "Courts faced with a motion to decertify must also take account of the progression of the litigation."  Jermyn, 276 F.R.D. at 169 (citing Langley v. Coughlin, 715 F. Supp. 522, 552 (S.D.N.Y. 1989); see also Woe v. Cuomo, 729 F.2d 96, 107 (2d Cir. 1984) (finding abuse of discretion where district court decertified the class after granting summary judgment in part).  "Decertification is an 'extreme step,' particularly at a late stage in the litigation, 'where a potentially proper class exists and can easily be created.'"  Gulino v. Board of Educ. of City School Dist. of City of N.Y., No. 96 Civ. 8414 (KMW), 2012 WL 6043803, at *8 (S.D.N.Y. Dec. 5, 2012) (quoting Woe, 729 F.2d at 107(internal quotation omitted)).

B.     <u>Analysis</u>

Here, PRA argues that the class should be decertified because only 19 individuals returned the claim form, and therefore the class has only 19 members and does not meet the numerosity requirement of Fed. R. Civ. P. 23(a).[9]  (Def. Decert. Br. 2)  PRA argues that the FDCPA only covers debts that arise from transactions "primarily for personal family or household purposes," and that Plaintiff put forth no evidence at the class certification stage to show that PRA had attempted to collect debts from class members who fall within this definition. (<u>Id.</u> at 3-4 (quoting 15 U.S.C. § 1692a(5))  PRA also notes that when the Court required class members to submit Claim Forms demonstrating that the debts PRA attempted to collect fall within this definition, only 19 individuals did so.  (<u>Id.</u> at 4)  PRA further argues that "[a]lthough this matter was certified as a class [action] based on 990 persons having received the operative letter from [PRA], it was later revealed that only 19 person could meet the threshold requirement that [PRA] attempted to collect a debt within the meaning of [the FDCPA]."  (<u>Id.</u>)  PRA contends that the return of only 19 properly completed claim forms is both an intervening event and a compelling reason to decertify the class.  (<u>Id.</u> at 3-6)

Defendant's argument is based on a fundamental misunderstanding of the class action process.  Fed. R. Civ. P. 23 creates an "opt-out" procedure whereby a class is certified and class members are then given an opportunity to exclude themselves from the class.  Fed. R. Civ. P. 23(c)(2)(B) ("The notice must clearly and concisely state in plain, easily understood language . . . that the court will exclude from the class any member who requests exclusion."); <u>see Dubin v. E.F. Hutton Grp., Inc.</u>, No. 88 Civ. 0876 (PKL), 1990 WL 210305, at *1 (S.D.N.Y. Dec. 11, 1990) ("[D]efendant's proposed Notice of Pendency includes an 'opt-in' provision that is clearly

---

[9]  Pursuant to Fed. R. Civ. P. 23(a)(1), a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable."

improper under the 'opt-out' procedure prescribed by Fed. R. Civ. P. 23(c)(2)."). Under this procedure, any class member who does not submit a timely request to be excluded from the class is deemed to be a member of the class. See Korn v. Franchard Corp., 456 F.2d 1206, 1209-10 (2d Cir. 1972) (holding that class included all members who did not affirmatively opt-out because "Rule [23] puts its emphasis on an objective and precise manifestation of lack of interest"); Harrison v. Great Springwaters of Am., Inc., No. 9 Civ. 5110 (ILG), 1998 WL 355399, at *2 (E.D.N.Y. May 5, 1998) (declining to decertify class in FDCPA class action even when de minimus number of individuals responded to voluntary questionnaire sent to all potential class members; "'[s]ince the notice clearly did not require a response, the numerosity requirement must be judged by the size of the class to whom the notices were sent, reduced only by the number of class members who affirmatively elected not to participate or whose notices were returned undelivered'") (quoting Rule v. Int'l Ass'n of Bridge, Structural & Ornamentals Ironworkers, 568 F.2d at 563-64 (8th Cir. 1977)); cf. Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG) (SMG), 2012 WL 1116495, *3 n.6 (E.D.N.Y. Apr. 3, 2012) ("The Court cannot assume that because these individuals chose not to opt-in to the FLSA collective action, they also desired to opt-out of the class action.").

Here, the Court certified the following class: "all consumers to whom the Defendant sent, within one year of the commencement of this action, a demand for payment letter on Portfolio Recovery Associates, LLC letterhead – signed by Catherine M. Hedgeman, Esq. – and enclosing a draft summons and complaint in a form materially identical or substantially similar to the 'Pre-Suit Package' sent to Jason P. Zimmerman, and which was not returned as undeliverable by the Postal Service." Zimmerman, 276 F.R.D. at 180-81. Defendant admits that 990 people meet this definition. (Pltf. R. 56.1 Stmt. ¶ 26; Def. R. 56.1 Resp. ¶ 26)

Therefore, there were 990 putative class members when the Class Notice was distributed.[10]  The opt-out procedure established by Fed. R. Civ. P. 23 was clearly explained in the Class Notice, which informed recipients:  "Unless you excluded yourself from the Class, you will be considered a member of the Class. . . ."  (Apr. 23, 2012 Lemberg Decl., Ex. F)  Only four individuals submitted clear and timely requests to be excluded.  (Apr. 23, 2012 Lemberg Decl., Ex. G)  Therefore, the final class includes 986 class members.[11]

Defendant also errs in arguing that only those who returned the Claim Form can be regarded as having had personal, family or household debts within the meaning of the FDCPA.  A similar argument was rejected by the Second Circuit in <u>Korn</u>.  There, the Court of Appeals declined to infer from a class member's failure to return a claim form in a securities fraud class action that the class member did not rely on the prospectus at issue.  <u>Korn</u>, 456 F.2d at 1210-11 ("[T]he absence of any requirement of filing [a proof of claim] makes it difficult to extrapolate from the actual responses to the [portion] of the possible class who failed to reply.").  Likewise, there is no basis for this Court to infer that the 956[12] class members who did not return

_____

[10]  There is no evidence that any of the Pre-Suit Packages were returned as undeliverable, nor is there any evidence that any of the Class Notices were returned as undeliverable.

[11]  Zimmerman argues that the final class size should be 987, that is, 990 putative class members, plus Zimmerman, minus the four individuals who requested exclusion.  (Pltf. Decert. Br. 4-5)  However, in his motion for class certification, Zimmerman counted himself among the group of 990.  (Pltf. Summ. J. Br. (Dkt. No. 34), at 2 ("The Pre-Suit Package transmitted to Mr. Zimmerman is one of 990 Pre-Suit Packages sent to New York consumers." (citing Def. Interrog. Resp. No. 19))  Accordingly, the final class size is 986.

[12]  The reference to 956 class members reflects the following calculations:  990 class members, minus the 33 individuals who returned some portion of the Claim Form, minus Zimmerman, whose debts the Court previously concluded were not commercial in nature.  <u>Zimmerman</u>, 276 F.R.D. at 178.

the Claim Form had only commercial debts.[13]  "[B]ecause return of the [claim form] was optional, it would not be proper to limit the class to those who sent in forms."  Id. at 1211.

        Finally, Defendant's argument conflates class members and claimants.  The Court ruled in its September 15, 2011 and November 8, 2011 orders that, because the FDCPA covers only non-commercial debts, it is appropriate to require class members to provide information demonstrating the nature of their debts "at the damages phase of [the] case," Macarz v. Transworld Sys., Inc., 193 F.R.D. 46, 57 (D. Conn. 2000), "as a condition to sharing in any class recovery."  Perry v. Beneficial Fin. Co. of N.Y., Inc., 81 F.R.D. 490, 496 (W.D.N.Y. 1979). (See Zimmerman, 276 F.R.D. at 180; Nov. 7, 2011 order, at 4)  Accordingly, the Class Notice instructed class members to submit the Claim Form – which required documentation or an explanation of the debts – "[i]f [they] wish[ed] to participate in class recovery."  (Apr. 23, 2012 Lemberg Decl., Ex. F)  As noted above, the Class Notice also informed class members that they would be considered members of the class unless they submitted a request to be excluded.  (Id.) Taken together, these instructions created a claims process that is consistent with Rule 23 and the FDCPA:  all those who did not request to be excluded would be deemed members of the class, but only those who submitted a Claim Form with the proper documentation or explanation would be eligible to share in the class recovery.

---

[13]  Such a conclusion would be particularly misguided here, given Defendant's admissions that the Pre-Suit Package was only sent to "consumers."  (See Apr. 23, 2012 Lemberg Decl., Ex. C (Interrog. Resp. Nos. 17, 19); Ex. E (Req. for Admis. Resp. No. 2)).  Under the FDCPA, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).  A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  Id. § 1692a(5). Accordingly, based on Defendant's admissions, it is reasonable to conclude that all 990 class members were consumers whose debts were incurred for personal, family, or household purposes.

For all of these reasons, the return of only 19 claim forms is neither a "significant intervening event" nor a "compelling reason" to decertify the class.  Karadzic, 192 F.R.D. at 136-37.  There is no new evidence to suggest that fewer than 990 people received the Pre-Suit Package, and aside from the 33 individuals who returned claim forms, there is no new evidence concerning the nature of the class members' debts.  Only the four individuals who requested to be excluded from the class will be excluded.

Defendant's arguments in favor of decertification of the class are not persuasive, and its motion for reconsideration will be denied.

## II.   **STATUTORY DAMAGES**

Plaintiff seeks $1,000 in statutory damages for Zimmerman as the named plaintiff; $500,000 in statutory damages for the class; and $5,000 for Zimmerman as an "incentive award" for his role in representing the class.  (Dkt. No. 54)

### A.   **Legal Standard**

In an FDCPA class action where, as here, a debt collector is found to have violated the Act, the debt collector is liable for (1) "such amount for each named plaintiff" "as the court may allow, but not exceeding $1,000," see 15 U.S.C. § 1692k(a)(2)(B)(i); and (2) "such amount as the court may allow for all other class members, without regard to minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector."[14]  Id. § 1692k(a)(2)(B)(ii).  Defendant concedes that, given its net worth, it is

---

[14]  Although debt collectors who violate the FDCPA may also be held liable for actual damages, 15 U.S.C. § 1692k(a)(1), the Complaint seeks only statutory damages.  (Cmplt. at 14; see also Nov. 8, 2011 order, at 3)

Defendant asserts that the FDCPA caps each class member's recovery at $1,000, and that failure to impose such a limit would lead to the "absurd result" that the named plaintiff might only be awarded $1,000 under Section 1692k(a)(2)(B)(i) while other class members received larger awards under Section 1692k(a)(2)(B)(ii).  (Def. Supp. Damages Br. 4-6)  However,

subject to a maximum statutory damage award of $500,000.  (Pltf. 56.1 Stmt. ¶ 6; Def. 56.1

Resp. ¶ 6; Def. Damages Br. 4 n.1)

"The decision whether to award statutory damages under the FDCPA and the size

of the award are matters committed to the sound discretion of the district court."  <u>Savino v.</u>

<u>Computer Credit, Inc.</u>, 164 F.3d 81, 86 (2d Cir. 1998).  "All that is required for an award of

statutory damages is proof that the statute was violated, although a court must then exercise its

discretion to determine how much to award, up to the [given] ceiling."  <u>Id.</u>  In determining the

amount of statutory damages to award in a class action, the Act directs courts to consider,

"among other relevant factors, . . . the frequency and persistence of noncompliance by the debt

collector, the nature of such noncompliance, the resources of the debt collector, the number of

persons adversely affected, and the extent to which the debt collector's noncompliance was

intentional."  15 U.S.C. § 1692k(b)(2); <u>see also</u> <u>Savino</u>, 164 F.3d at 86 (same).

**B.**     **Analysis**

**1.**     **Class Damages**

The first factor listed in the Act – "the frequency and persistence of [the debt

collector's] noncompliance" – weighs against imposing a maximum statutory award here.

Although "a single violation of the FDCPA is sufficient to impose liability," <u>Ellis v. Solomon &</u>

<u>Solomon, P.C.</u>, 591 F.3d 130, 133 (2d Cir. 2010), "courts in this Circuit have found that a

[smaller] award is appropriate where there is no repeated pattern of intentional abuse or where

---

nothing in the Act prevents named plaintiffs from receiving their share of a class award under
Section 1692k(a)(2)(B)(ii) <u>in addition to</u> an award under Section 1692k(a)(2)(B)(i) recognizing
their role in bringing the litigation.

　　　Defendant also contends that the phrase "without regard to minimum individual
recovery" demonstrates Congress's intent that class members other than the named plaintiff
receive only nominal awards.  (Def. Supp. Damages Br. 6-7)  The Court concludes that this
language means no more and no less than what it says:  there is no minimum individual recovery
amount to which class members in an FDCPA class action are entitled.

the violation was technical." <u>Dona v. Midland Credit Mgmt., Inc.</u>, No. 10 Civ. 0825 (JS)

(WDW), 2011 WL 941204, at *3 (E.D.N.Y. Feb. 10, 2011); <u>see also</u> <u>Savino</u>, 164 F.3d at 86

(holding that district court did not abuse its discretion in granting individual plaintiff award equal

to half of statutory maximum when debtor sent only one letter).  Here, whether "frequency and

persistence of noncompliance" is understood as relating to the "Pre-Suit Package" specifically or

PRA's conduct as a debt collector in general, there is no basis for finding that PRA's

noncompliance was frequent or persistent.  PRA sent only one copy of the Pre-Suit Package to

each class member, and there is no evidence that packages in this form were disseminated by

PRA before this incident.[15]  Nor is there any evidence in the record that Courts have found PRA

to be a repeat FDCPA violator.  Accordingly, this factor weighs in favor of a smaller statutory

award.

    The nature of Defendant's noncompliance weighs in favor of a larger statutory

award.  In enacting the FDCPA, Congress sought "to eliminate[e] abusive practices in the debt

collection industry, and also sought to ensure that 'those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged.'" <u>Jacobson v. Healthcare</u>

<u>Fin. Servs., Inc.</u>, 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692(e)); <u>Russell v.</u>

<u>Equifax A.R.S.</u>, 74 F.3d 30, 33 (2d Cir. 1996) (describing legislative intent to impose strict

liability in order to curb "unscrupulous practices" in debt collection industry).  One of the

---

[15]  Plaintiff has offered deposition testimony suggesting that PRA utilized "Pre-Suit Packages" in other states.  (<u>See</u>, <u>e.g.</u>, Apr. 23, 2012 Lemberg Decl., Ex. A (Hedgeman Dep. Tr.) at 83:16-18 ("I was aware that there was a pre-suit process in other states . . . ."); <u>id.</u>, Ex. B (Mesisco Dep. Tr.) at 26:11-15 (stating that, at the relevant time, PRA had attorneys working in twelve states); <u>id.</u> at 129:17-20 ("[T]he only thing the litigation department creates and sends out and communicates, to my knowledge, is the pre-suit letter and the package.")).  Those "Pre-Suit Packages" have not been offered as evidence in this proceeding, however.  Accordingly, the Court cannot make a determination that the "Pre-Suit Package" at issue here was distributed on other occasions by PRA.

"abusive practices" addressed in the Act is "[t]he false representation or implication that documents are legal process."  15 U.S.C. § 1692(e)(13).

Here, PRA, in developing and distributing the Pre-Suit Packages, engaged in that "abusive practice."  Moreover, PRA's Pre-Suit Package contained documents "strikingly similar" to documents that another court in this District had found to be violative of the FDCPA. See Zimmerman, 276 F.R.D. at 178 (citing Wiener v. Bloomfield, 901 F. Supp. 771, 776 (S.D.N.Y. 1995)).  Given the similarities between the Pre-Suit Packages and mailings previously held violative of the FDCPA, Defendant "knew or should have known that these collection letters violated [the FDCPA]."  Clomon v. Jackson, 988 F.2d 1314, 1322-23 (2d Cir. 1993); Heyward v. PRA Recovery, Inc., No. 10 Civ. 2030 (MRK), 2011 WL 3134985, at *4 (D. Conn. May 13, 2011) (same).  In short, Defendant's use of the Pre-Suit Package falls squarely within the "unscrupulous" behavior that the FDCPA seeks to prevent, and the nature of its noncompliance thus argues for a large statutory award.

The next factor – "the resources of the debt collector" – also supports a large statutory award.  PRA is a large company; its net worth exceeds $50 million.  (Pltf. 56.1 Stmt. ¶ 6; Def. 56.1 Resp. ¶ 6; Def. Damages Br. 4 n.1)  Given that "the Act's overarching purpose [is to] deter[] deceptive conduct," Jacobson, 516 F.3d at 91, the sanction imposed must be sufficient to deter PRA from engaging in abusive practices in the future.

The Act also directs courts to consider "the number of persons adversely affected" by the debt collector's wrongful conduct.  15 U.S.C. § 1692k(b)(2).  Here, PRA sent the Pre-Suit Package to 990 individuals.  PRA contends that – in determining "the number of persons adversely affected" by its conduct – the Court should consider only those class members who properly completed the Claim Form and demonstrated the non-commercial nature of their debts.

(Def. Damages Br. 5-8)  Given Defendant's admissions that it sent the Pre-Suit Package to 990 "consumers," this argument is not persuasive.  Moreover, as discussed above, the fact that a given class member did not return the Claim Form reveals nothing about the nature of that individual's debts.  Finally, Defendant's contention that none of the class members were adversely affected because none suffered actual damages (Def. Damage Br. 4-5) is directly contrary to the essence of the FDCPA, which imposes strict liability for statutory damages regardless of actual injury.  See Savino, 164 F.3d at 86 ("All that is required for an award of statutory damages is proof that that statute was violated. . . .").  Accordingly, this factor weighs in favor of a large statutory award.

The last statutory factor is "the extent to which the debt collector's noncompliance was intentional."  15 U.S.C. § 1692k(b)(2).  As noted above, the Pre-Suit Package that PRA sent to 990 consumers is "strikingly similar" to documents that another judge in this District had found violative of the FDCPA.  See Zimmerman, 276 F.R.D. at 178 (citing Wiener, 901 F. Supp. at 776).  The cover letter accompanying the simulated pleadings that make up the Pre-Suit Package is printed on the letterhead of PRA's "Litigation Department," and is signed by "Catherine M. Hedgeman, Esq."  Id. at 176.  Given the size of PRA, the involvement of its legal department, and the quantity of Pre-Suit Packages sent out to consumers, it is reasonable to assume that the dissemination of these materials was deliberate and intentional, and not the product of mistake or inadvertence.  Moreover, in light of the Wiener opinion, dissemination of the Pre-Suit Package can only be seen as intentional wrongdoing.  This factor weighs strongly in favor of a large statutory award.

In sum, analysis of the Section 1692k(b)(2) factors indicates that a large statutory award is appropriate.  That award must be sufficient to deter a company of PRA's size from

14

future abusive practices and must reflect the egregious nature of what the Court concludes was intentional misconduct.  However, the award must also reflect the absence of evidence in the record that PRA is a serial FDCPA violator.  Under all the circumstances, the Court concludes that a class award of $350,000 is appropriate.

Plaintiff contends that any class award should be distributed pro rata to (1) all 986 class members who did not exclude themselves from the class, or (2) all class members who successfully submit a Claim Form, but only after a new notice is distributed.  (Pltf. Damages Br. 17-20; Pltf. Supp. Damages Br. 6-10)  The Court will not adopt either approach.  Although the 986 individuals who did not exclude themselves from the class are class members, they are not automatically entitled to relief.  The Class Notice clearly states, "If you wish to participate in class recovery complete and return the attached 'Claim Form'. . . ."  (Apr. 23, 2012 Lemberg Decl., Ex. F)  Those class members who did not return the claim form have communicated that they are not interested in participating in the class recovery.

As to the class members who returned a claim form, pro rata distribution of the statutory award to them would constitute an unreasonable windfall that does not properly reflect any injury they suffered.  The Court concludes that an appropriate award to class members who returned the claim form is $500.  Of the 29 individuals who returned the claim form (and did not return solely the "Request to be Excluded as a Class Member" portion of the form), it is not entirely clear from the parties' submissions which individuals should receive an award.  The fourteen consumers who timely returned the form and properly completed it should share in the recovery.  In addition, the two individuals who returned both portions of the claim form, but who otherwise communicated that they wished to share in the class recovery, should receive a $500 payment.  Less clear to the Court is the proper resolution as to the thirteen individuals who either

completed both portions of the form and/or did not provide sufficient information to show that their debts were non-commercial.  The parties will submit additional briefing by April 12, 2013 as to whether these thirteen individuals should participate in the class recovery.

The remaining portion of the $350,000 class award, and any payments not cashed by the claimants after 90 days, will be granted as a cy pres award to a non-profit organization working to curb abusive debt collection practices or to increase consumer awareness of such practices.  See O'Connor v. AR Resources, Inc., No. 08 Civ. 1703 (VLB), 2012 WL 12743, at *1 (D. Conn. Jan. 4, 2012) (approving settlement including cy pres payments to the National Consumer Law Center and the National Association of Consumer Advocates); Garland v. Cohen & Krassner, 2011 WL 6010211, at *15 (ordering that after 90 days, un-cashed settlement funds would be distributed as a cy pres award to the National Consumer Law Center); Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., No. 04 Civ. 2195 (CPS), 2006 WL 3681138, at *7 (E.D.N.Y. Dec. 11, 2006) (approving settlement satisfied entirely by $15,000 cy pres award);  Bourlas v. Davis Law Assoc., 237 F.R.D. 345, 356 (E.D.N.Y. 2006) (ordering that un-cashed settlement funds would be paid as a cy pres award to Neighborhood Economic Development Advocacy Project (NEDAP) in New York City and the Empire Justice Center in Albany, New York).  The parties will submit by April 12, 2013, a joint list of organizations that would be appropriate recipients of a cy pres award.

## 2.    Zimmerman's Damages

Zimmerman is entitled to a $500 share of the $350,000 class award.  In granting his motion for summary judgment, the Court concluded that "there is no material issue of fact concerning the nature of Zimmerman's debt," such that he is eligible to recover under the FDCPA.  Zimmerman, 276 F.R.D. at 178.

As the named plaintiff, Zimmerman is also entitled to an award of up to $1,000. See 15 U.S.C. § 1692k(a)(2)(B). As with the class award, the amount of such an individual award is left to the Court's discretion. Savino, 164 F.3d at 86. Given Zimmerman's role in representing the class for nearly three years and in bringing Defendant's conduct to light, the Court finds that the maximum award is appropriate. Accordingly, Zimmerman will be granted an additional $1,000 for a total individual award of $1,500.[16]

Plaintiff's request for a $5,000 "incentive award" is denied. The Court finds no support for an "incentive award" in Section 1692k(a)(2)(B).

## CONCLUSION

For the reasons stated above, Defendant's motion for reconsideration (Dkt. Nos. 65, 66) is DENIED. Plaintiff's motion for statutory damages (Dkt. No. 54) is GRANTED as set forth in this opinion. The class is awarded $350,000 in statutory damages and Plaintiff is awarded an additional $1,000 in statutory damages. Distribution of the class award will be the subject of a future order, after briefing has been submitted in accordance with this opinion. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 54, 65, 66).

Dated: New York, New York
      March 27, 2013

                    SO ORDERED.

                    _____
                    Paul G. Gardephe
                    United States District Judge

---

[16] The class component will be drawn from the $350,000 class award; the $1,000 payment is in addition to the $350,000 class award.