**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JASON ZIMMERMAN,** on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO**.** 09-cv-04602-PGG |
| v. | |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC,** | CLASS ACTION |
| Defendant. | |

## DEFENDANT PRA'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

On the Brief:
Donald S. Maurice, Jr., Esq.
Thomas R. Dominczyk, Esq.

MAURICE & NEEDLEMAN, P.C.
Attorneys for Defendant
Portfolio Recovery Associates, LLC
5 Walter E. Foran Blvd., Suite 2007
Flemington, New Jersey 08822
(908) 237-4550

Date: May 10, 2013

# **Table of Contents**

TABLE OF AUTHORITIES ............................................................................................................ii

STATEMENT OF FACTS AND PROCEDURAL HISTORY.................................................... 1

LEGAL ARGUMENT.................................................................................................................. 2

    I.    LEGAL STANDARD FOR FEE APPLICATIONS.......................................................... 2

    II.   DEFENDANT'S OBJECTIONS AND OPPOSITION TO THE PLAINITFF'S FEE PETITION.. 4

    III.    PLAINTIFF HAS NOT PROVIDED ANY PROOF TO SUBSTANTIATE HIS "COSTS" INCURRED .......................................................................................................................... 33

CONCLUSION........................................................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

Adusumelli v. Steiner, 2013 U.S. Dist. LEXIS 45440 (S.D.N.Y., Mar. 28, 2013) ...................... 10

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522, F3d 182 (2nd Cir. 2007).................................................................................................................... 3, 4

Barile v. Allied Interstate, Inc., 2013 U.S. Dist. LEXIS 32483 (S.D.N.Y., Jan. 30, 2013).... 7, 8, 9

Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ................................... 4

Carrasco v. West Vill. Ritz Corp., 2012 U.S. Dist. LEXIS 95596 (S.D.N.Y., Jul. 11, 2012). 9, 25, 26

Days Inn Worldwide v. Amar Hotels, Inc., 2008 U.S. Dist. LEXIS 37328 (S.D.N.Y., May 2, 2008)................................................................................................................................. 9

Dunn v. Advanced Credit Recovery, Inc., 2012 U.S. Dist. LEXIS 27205 (S.D.N.Y., Mar. 1, 2012)................................................................................................................................. 6

Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010) ......................................... 1

Goldberger v. Integrated Res., Inc., 209 F. 3d 43 (2nd Cir. 2000) ................................................ 32

Gross v. Wash. Mut. Bank, F.A., 2006 U.S. Dist. LEXIS 16975 (E.D.N.Y., Feb. 8. 2006).... 5, 32

Harris v. Fairweather, 2012 U.S. Dist. LEXIS 128409 (S.D.N.Y. Sep. 10, 2012)...................... 33

Hensley v. Eckerhart, 461 U.S. 424 (1983) ........................................................................... 2, 3, 9

Hofler v. Family of Woodstock, Inc., 2012 U.S. Dist. LEXIS 20756 (N.D.N.Y Feb. 16, 2012). 10

In re "Agent Orange" Product Liab. Litig., 818 F.2d 226 (2d Cir. 1987) ..................................... 9

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) ................................ 3, 4

Leyse v. Corporate Collection Servs., 545 F. Supp. 2d 334 (S.D.N.Y. 2008) .............................. 6

Millea v. Metro-North R.R., 658 F.2d 154 (2nd Cir. 2011)............................................................ 4

O'Toole v. Allied Interstate, LLC, 2012 U.S. Dist. LEXIS 176215 (S.D.N.Y., Dec. 12, 2012) .. 5, 7, 8

Perdue v. Kenny A., 559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) ............... 3, 32, 33

Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23 (2d Cir. 1983) ................................... 4

Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628 (S.D.N.Y. 2012) ................................... 10, 13

Seitzman v. Sun Life Assurance Co. of Canada, 311 F.3d 477 (2nd Cir. 2002) ............................ 9

Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic, 2012 U.S. Dist. LEXIS 164261 (S.D.N.Y., Nov. 14, 2012) ....................................................................... 9

Vagabond Sys. v. Hydrapak, Inc., 2013 U.S. Dist. LEXIS 4853 (S.D.N.Y., Jan. 11, 2013) ....... 10

Vagenos v. LDG Fin. Servs., LLC, 2010 U.S. Dist. LEXIS 145002 (E.D.N.Y. Jul. 20, 2012)..... 6

Van Echaute v. Law Office of Thomas Landis, 2011 U.S. Dist. LEXIS 34463 (N.D.N.Y., Mar. 31, 2011)................................................................................................................................ 5, 35

Wiener v. Bloomfield, 901 F. Supp. 771 (S.D.N.Y. 1995)............................................................ 11

Wilder v. Bernstein, 975 F. Supp. 276 (S.D.N.Y. 1997) ........................................................ 10, 17

Winkfield v. Kirschenbaum & Phillips, P.C., 2013 U.S. Dist. LEXIS 12093 (S.D.N.Y., Jan. 29, 2013)................................................................................................................................ 5, 7, 8

Woods v. Sieger, Ross & Aguire, LLC, 2012 U.S. Dist. LEXIS  69972 (S.D.N.Y., May 18, 2012).......................................................................................................................................... 6

**Statutes**

15 U.S.C. § 1692e(9) ..................................................................................................................... 1

15 U.S.C. § 1692e(13) ................................................................................................................... 1

15 U.S.C. § 1692k(a)(3)................................................................................................................. 2

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff's complaint was filed on May 14, 2009.  (Doc. 1).  While four years have passed from the filing of the complaint to the pending application for attorneys' fees and costs, the extent of the litigation is exaggerated in the Plaintiff's fee petition.

This case examined whether the sending of a letter which contained a form of an unfiled summons and complaint (the "Pre-Suit Package") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(9) and (13). Opinion and Order, September 15, 2011 (Doc. 49), p. 6. The FDCPA is often described as a "strict liability" statute. Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010).  With minimal written discovery and a total of three depositions lasting a few hours each, the question of liability was disposed of on summary judgment. Opinion and Order, September 15, 2011 (Doc. 49), p. 6-8. Class certification was granted at the same time summary judgment was entered. Opinion and Order, September 15, 2011 (Doc. 49), p. 8-11.

Thereafter, the parties submitted proposals and arguments regarding the class notice and the notice was sent at Defendant's expense.  Finally, Plaintiff moved for damages on April 23, 2012.  Defendant opposed the motion for damages and filed a motion to decertify the class. On June 28, 2012, after a brief hearing on the pending motions, the court ordered the parties to submit supplemental briefs and referred the case to Judge Davison for a settlement conference.

Plaintiff now seeks to recover nearly 800 hours to litigate this strict liability case, which Plaintiff described as encompassing conduct that violated "very clear and specific prohibitions" of the FDCPA. Plaintiff's Memorandum of Law in Support of Summary Judgment (Doc. 36), p.

1

6. Although, as Plaintiff suggested, liability was ultimately not difficult not prove on summary judgment with minimal discovery, request is made to multiply the fee award 1.5 times.

This brief will demonstrate that the Plaintiff's fee application is inadequately documented and includes hours not reasonably expended. Analysis of the fee petition reveals block billing (where numerous separate entries are cobbled together) preventing any analysis of the nature of the work, the source and nature of the communication, or why the work was necessary. The petition is also rife with duplicative billing entries made by several attorneys all reflecting they performed the same work. The fee petition also seeks compensation for administrative tasks, such as reviewing the docket or scheduling conferences between attorneys. There are instances where the time allegedly spent cannot reasonably be reflected by the actual work performed.

Further as will be shown below, the fee application seeks hourly fee rates that are far in excess of the rates awarded in this District not only to similar attorneys, but to the Plaintiff's law firm, Lemberg & Associates.

For these reasons, the Plaintiff's fee request should be adjusted.

## LEGAL ARGUMENT

### I.   LEGAL STANDARD FOR FEE APPLICATIONS
#### 1.   The Lodestar and the FDCPA

Under the FDCPA, "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court," are to be awarded to the plaintiff. 15 *U.S.C.* § 1692k(a)(3). Historically, a court's determination of a reasonable attorney fee would follow the familiar "lodestar" method that applies to fee awards under fee-shifting statutes. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar formula requires a determination of the "number of hours reasonably expended on the litigation"

multiplied by a "reasonable hourly rate."  Id.  Plaintiff cites Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522, F3d 182 (2nd Cir. 2007) for the proposition that the lodestar has been abandoned and replaced with a "presumptively reasonable fee" standard.

The Arbor Hill standard is similar to Hensley's lodestar in that it still requires the court to determine a reasonable hourly rate and then multiply it by the number of hours reasonably expended with an adjustment upward or downward based on certain case specific factors originally set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

After Arbor Hill, the Supreme Court issued its opinion on Perdue v. Kenny A., 559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) and confirmed that the lodestar method is still alive and well although subject to enhancement in "rare" and "exceptional" circumstances. Perdue sets forth "six important rules" for courts to follow in calculating attorneys' fees in fee-shifting cases. First, a "reasonable fee" is one that will "induce a capable attorney" to undertake the representation. Id, at 1672. Next, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." Id. Enhancement of the lodestar may only be awarded in "rare" and "exceptional" circumstances. Id. Fourth, because the lodestar includes "most, if not all" of the factors which constitute a "reasonable attorney's fee," enhancement cannot be awarded based on a factor included in determining the lodestar. The "novelty and complexity" of a case is not a factor for enhancement because it is reflected in the hours expended by counsel, which already are a basis for the lodestar. Id. Nor is the quality of counsel's performance a basis for enhancement "because considerations concerning the quality of a prevailing party's counsel's representation are normally reflected in the reasonable hourly rate." Id.  Fifth, the fee applicant

3

has the burden of proving an enhancement "is necessary." Id, at 1673. Last, a fee application seeking an enhancement must produce "specific evidence" that supports the award. Id.

Subsequently, the Second Circuit confirmed that "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." Millea v. Metro-North R.R., 658 F.2d 154, 166 (2nd Cir. 2011). Millea further held that "absent extraordinary circumstances, failing to calculate [the lodestar] as a starting point is legal error." Id.

## II.   DEFENDANT'S OBJECTIONS AND OPPOSITION TO THE PLAINITFF'S FEE PETITION

### A.   Plaintiff's Requested Hourly Rates are Unsupported

With regard to the reasonable hourly rate, the Second Circuit has instructed courts to determine what "a reasonable, paying client would be willing to pay" which will vary by practice area and location.  Arbor Hill, 522 F.3d at 184.[1]  In making this determination the court should examine the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983).

---

[1] Arbor Hill notes the twelve "Johnson Factors" that courts consider in determining the reasonableness of the fee. Some are incorporated in the determination of a reasonable hourly rate and others in the determination of hours reasonably expended: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Id. at 186 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

Plaintiff's lodestar argument solely relies on cases discussing attorney fee rates within the Southern and Eastern Districts of New York. However, the only FDCPA case he cited which examined lodestar fees in FDCPA matters was <u>Gross v. Wash. Mut. Bank, F.A.</u>, 2006 U.S. Dist. LEXIS 16975 (E.D.N.Y., Feb. 8. 2006). <u>Gross</u> is distinguishable from the present case in that (a) it involved an unopposed motion to approve a class action settlement agreement; (b) it did not involve Plaintiff's attorneys; and (c) was not from the District in which this court sits.

Plaintiff provides no evidence of the market rate prevailing in *this District* for FDCPA counsel of comparable skill and reputation. However, such evidence does exist in case law. In fact, cases from this District have already examined and determined the lodestar for Plaintiff's counsel here, Lemberg & Associates, in FDCPA cases. Plaintiff does not reference these cases, although each of them found his reasonable hourly rate to be far less than the $400 an hour he seeks here. In <u>Winkfield v. Kirschenbaum & Phillips, P.C.</u>, 2013 U.S. Dist. LEXIS 12093 (S.D.N.Y., Jan. 29, 2013), an opinion delivered just over three months ago, the court held that "the hourly rates sought by Lemberg are inconsistent with rates approved in this district for Fair Debt Collection Practices Act (FDCPA) litigation" and reduced fees for Sergei Lemberg to $300 per hour. <u>Id.</u> at *8-9. <u>See also</u> <u>O'Toole v. Allied Interstate, LLC</u>, 2012 U.S. Dist. LEXIS 176215 (S.D.N.Y., Dec. 12, 2012) (awarding $300 per hour for partner and $225 per hour for associates in FDCPA case). Lemberg's request for $400 per hour was similarly rejected in <u>Van Echaute v. Law Office of Thomas Landis</u>, 2011 U.S. Dist. LEXIS 34463 (N.D.N.Y., Mar. 31, 2011) a case in which the court reduced his hourly rate to $210 and co-counsel Susan Schneiderman's rate to $120 per hour and co-counsel Jody Burton's rate to $120 per hour.

Looking outside of the lodestar determinations made for Lemberg in this District, other courts within this District have extensively opined on the reasonable rate for successful

5

plaintiff's counsel in FDCPA litigation.  In <u>Woods v. Sieger, Ross & Aguire, LLC</u>, 2012 U.S. Dist. LEXIS  69972 (S.D.N.Y., May 18, 2012) the court approved an hourly rate of $200 per hour for a 2004 law school graduate who founded his own firm after working for three years as a plaintiff's attorney in medical malpractice cases.  In <u>Dunn v. Advanced Credit Recovery, Inc.</u>, 2012 U.S. Dist. LEXIS 27205 (S.D.N.Y., Mar. 1, 2012) the court approved an hourly rate of $300 per hour for two attorneys who had been licensed for 15 and 25 years respectively.  In <u>Vagenos v. LDG Fin. Servs., LLC</u>, 2010 U.S. Dist. LEXIS 145002 (E.D.N.Y. Jul. 20, 2012) the court reduced an hourly rate from $400 to $250 for an attorney who "has been practicing law since 2001 [and] in 2005 opened a private practice with emphasis on FDCPA litigation."  <u>See also</u> <u>Leyse v. Corporate Collection Servs.</u>, 545 F. Supp. 2d 334 (S.D.N.Y. 2008) (awarding $225 per hour for an attorney with ten years' experience).

The affidavit of Sergei Lemberg is vague with regard to his actual practice under the FDCPA.  A search of PACER in the federal jurisdictions in which Lemberg is admitted to practice does not reveal any FDCPA complaints filed prior to August 21, 2008 and the earliest complaint filed under any area of law was filed on November 14, 2006.  Declaration of Donald S. Maurice, Jr. in Support of Defendant's Opposition to Plaintiff's Fee Application, ¶¶2-4.

According to the website of Lemberg & Associates, "after holding positions with several major law firms in New York and Connecticut, Mr. Lemberg launched his own practice in 2006."  www.lemberglaw.com/about-team.php, accessed May 7, 2013.  In a blog post, attorney Lemberg says, he

> spent five years working in a series of major law firms.  I was a corporate associate in the New York office of Boston-based Mintz Levin, then a bankruptcy associate at the New York office of Houston-based Andrews Kurth, and finally a bankruptcy/litigation associate at what is now the 400-lawyer firm of Day Pitney in Stamford, Connecticut.  Working for large firms representing

corporate clients embroiled in litigation or bankruptcy wasn't as fulfilling as I hoped."

www.susancartierliebel.typepad.com/build_a_solo_practice/confessions_and_inspirations/ accessed May 7, 2013.

Thus, it appears that Lemberg has only been practicing in the FDCPA area since 2008.

As noted in <u>Winkfield</u>, <u>O'Toole</u>, <u>Ryan</u>, and <u>Barile</u>, $300 per hour is the prevailing rate in the Southern District of New York for experienced FDCPA attorneys and $225 is the prevailing rate for lesser experienced attorneys. At best, Lemberg has been practicing consumer protection law of some kind for the past 7 years and has been involved in FDCPA litigation for the past 5 years. Thus, Defendant asserts that Mr. Lemberg's rate should be no more than $300 per hour and in no event should his rate be $400 per hour. *(See Adjusted Billing Summary of Lemberg and Associates attached and marked as Exhibit "A").*

The credentials and experience of Martin Mushkin are set forth in his certification are impressive. Although he has been practicing for over 50 years, it appears that the majority of that experience was in securities litigation and he has little if any experience in consumer protection matters. It is unclear whether a reasonable paying client would pay a premium for Mr. Mushkin's services in a legal area that is outside of his expertise. At most his hourly rate in this matter should be $300 as set forth in <u>Winkfield</u>, <u>O'Toole</u>, <u>Ryan</u>, and <u>Barile</u>. *(See Adjusted Billing Summary of Martin Mushkin attached and marked as Exhibit "B").* Plaintiff's fee application seeks the same rate for Lemberg and Mushkin further supporting a an hourly rate equal to Lemberg's -- $300.00.

Lemberg associate Stephen Taylor states he has been admitted to practice since 2008. http://www.lemberglaw.com/about-team.php, accessed May 7, 2013. His declaration indicates that he joined the Lemberg firm in February 2009 and his practice with the firm has been focused

on consumer class actions and other complex litigation.  At best he has 4 years of experience in this area of the law and his rate should be set at $225 per hour pursuant to <u>Winkfield</u>, <u>O'Toole</u>, <u>Ryan</u>, and <u>Barile</u>. (See Exhibit "A").

Susan Schneiderman's declaration indicates that while she may have considerably more years of professional experience than attorney Lemberg, she still practiced under his supervision, suggesting that she is less experienced in prosecuting FDCPA cases.  Her declaration is vague and generic with regard to her actual experience other than to say that she has "practiced continually before the New York State Courts and the U.S. District Courts for the Southern and Eastern Districts of New York since February 1985." <u>See</u> Schneiderman Declaration, paragraph 3. As to the nature of this practice, she states she has ". . . focused principally upon litigation, including complex commercial litigation and litigation arising under Federal and State statutes." Id. She does not report having any experience in FDCPA or other consumer litigation.

Also, her declaration claims that she has "reviewed the time log submitted by the [Lemberg] Firm in support of this motion for fees.  The entries therein accurately reflect work I performed with **respect to the Appeals**." <u>Id.</u>, paragraph 5 (emphasis added).  It is unclear what appeals <u>Schneiderman</u> is referring to as none of the orders in this matter have been appealed. Given that Schneiderman was working under the supervision of Lemberg, her hourly rate should be lower than her supervisory attorney and in this instance set at $225 per hour. (See Exhibit "A").

Attorneys Jody Burton and Jennifer DeFrancisco have not submitted affidavits in support of their qualifications.  Therefore, fees associated with Burton and DeFrancisco must be excluded from the lodestar. (See Exhibit "A")

      **B.**     **Plaintiff's Hours are Unreasonable, Excessive, Unnecessary, Duplicitous, Vague and Non-Compensable**

With regard to the number of hours reasonably expended, courts should reduce the stated hours if they are excessive.  See Barile v. Allied Interstate, Inc., 2013 U.S. Dist. LEXIS 32483, *7 (S.D.N.Y., Jan. 30, 2013) (citing Seitzman v. Sun Life Assurance Co. of Canada, 311 F.3d 477, 487 (2nd Cir. 2002)).  Further, "hours attributable to over-staffing, hours that appear excessive in light of the experience and skill of the lawyers and hours that are redundant or otherwise unnecessary" should not be included in the lodestar calculation.  Hensley, 461 U.S. at 434.  The court should also reduce the hours if the attorney's time records are "vague or otherwise inadequate to enable the Court to determine the reasonableness of the work performed or the time expended."  Id. (citing Hensley, 461 U.S. at 433; Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic, 2012 U.S. Dist. LEXIS 164261, at *10 (S.D.N.Y., Nov. 14, 2012)).  See also Ryan v. Allied Interstate, Inc., 882, F. Supp. 2d 628 (S.D.N.Y. 2012).

Courts will also reduce or eliminate block billed time entries that are "vague and the time spent excessive."  See Carrasco v. West Vill. Ritz Corp., 2012 U.S. Dist. LEXIS 95596 (S.D.N.Y., Jul. 11, 2012) (eliminating 2.30 hours for "finalizing complaint" and further eliminating all fees incurred by an attorney for "'drafting default motion' (5.50 hours), 'preparation of the default motion' (4.75 hours), 'finalizing default motion' (3.80 hours) and 'filing default motion' (1.50) hours"). When dealing with vague and excessive entries, courts have often applied percentage reductions in lieu of item by item reductions as approved by the Second Circuit in In re "Agent Orange" Product Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987). See e.g. Days Inn Worldwide v. Amar Hotels, Inc., 2008 U.S. Dist. LEXIS 37328 (S.D.N.Y., May 2, 2008) (75% reduction of lodestar due to "a significant number of vague entries" that "do not aid the Court in understanding the nature of the work performed"). See also, Source

9

<u>Vagabond Sys. v. Hydrapak, Inc.</u>, 2013 U.S. Dist. LEXIS 4853 (S.D.N.Y., Jan. 11, 2013) (50% reduction for excessive entries on a motion); <u>Thomas v. United States</u>, 2011 U.S. Dist. LEXIS 140001 (S.D.N.Y., Dec. 5, 2011) (75% reduction to due to excessive, vague and redundant time entries); <u>Hofler v. Family of Woodstock, Inc.</u>, 2012 U.S. Dist. LEXIS 20756 (N.D.N.Y Feb. 16, 2012) (50% reduction noting that nine hours spent drafting an 11-page Complaint and then 4.2 hours editing it, among other this, was excessive).

In addition, Plaintiffs should not recover fees incurred by attorneys for performing administrative tasks.  <u>Ryan v. Allied Interstate, Inc</u>., 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012).

A final area of adjustment concerns reductions for travel time.  "Courts within the second circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates." <u>Wilder v. Bernstein</u>, 975 F. Supp. 276, 284 (S.D.N.Y. 1997).   <u>See also</u>, <u>Adusumelli v. Steiner</u>, 2013 U.S. Dist. LEXIS 45440 (S.D.N.Y., Mar. 28, 2013).

With regard to the hours reasonably expended, Defendant submits that Plaintiff's fee petition does comport with the above-cited standards. It is, therefore, grossly overinflated and also includes tens of thousands of dollars in unnecessary and unreasonable time entries which are vague and non-descript under the circumstances of the subject litigation. PRA has provided this Court with an adjusted billing summary for the Lemberg firm as well as for Mr. Mushkin. (See Exhibits "A" & "B" attached). The adjusted billing summaries specify the areas where the exclusion of time is warranted, the reasoning supporting the exclusion and a calculation of how much time must be excluded. Below is a more detailed and chronological explanation of particular categories of time to be excluded or otherwise reduced.

**1. Hours Related to Initial Review and Filing of Complaint (April 28, 2009 thru May 14, 2009)**

During the 2 weeks between the initial client interview (April 28, 2009) and the filing of the complaint (May 14, 2009), Plaintiff's attorneys billed an astonishing 47.1 hours to research, draft and file a 15 page complaint plus exhibits.

The inadequacy and vagueness of the billing records is evident from the very first entry on April 28, 2009 when Lemberg **block** bills 3.5 hours to:

> review client's documents; interview client; conf client re class action potential, responsibilities, impact on individual claim and timing; draft retainer and transmit to client; TC with MM re case and discussion about legal memo and merits.

Fifty percent of the total hours attributed during this period must be excluded from both Lemberg and Mushkin's billings statements which is detailed in Exhibits "A" & "B" attached.[2]

On May 4, 2009, Lemberg engaged in a task that did not require the exercise of his professional judgment. It is described as "check[ing] dockets in all counties for complaints against client – none filed (1.00)." A non-attorney assistant can provide the same service. **This entry must be excluded in its entirety**.   (See Exhibit "A").

On May 7, 2009, Lemberg reviewed and revised the draft complaint (1.3 hours) and discussed same with Attorney Mushkin (1.1 hours).  The same day, Mushkin **block** billed 3.2 hours for "review of complaint and discussion regarding it with SL".  Finally, on May 14, 2009 Lemberg **block** bills 2.6 hours for "final go-around of comments on the complaint, address Marty's comments; research liability under 1692j – compiling deceptive forms."[3]

---

[2] One of the reasons why Plaintiff sought increased damages (and an attorney fee enhancer) is because PRA's pre-suit package was essentially similar to one that was found to violate the FDCPA in *Wiener v. Bloomfield*, 901 F. Supp. 771, 776 (S.D.N.Y. 1995), a case that Plaintiff characterized as "clear precedent on point."  See Plaintiff's brief, p. 5. It is unreasonable then for counsel and his associates as well as Mr. Mushkin to spend an extraordinary amount of hours on a case in which precedent in this District was already established.

[3] The billing entries do not describe what attorneys do in the Lemberg Firm as part of a "go-around"

On May 11, 2009, Attorney Mushkin bills 3.8 hours for "going over the complaint once more."

Finally on the date the Complaint was filed, Mushkin bills 1.1 hours for "examining the complaint and other docs filed with."  This entry appears to be for time spent reading documents that his co-counsel just filed after he spent 3.8 hours three days earlier "going over the complaint once more."  (See Exhibit "B:) **This entry is entirely unnecessary and must be excluded**.

2.   **Hours Related to Post Complaint Review, Service and Extensions (May 21, 2009 thru June 25, 2009)**

On May 21, 2009 both Lemberg (0.8 hours) and Mushkin (0.4 hours) bill time to review the scheduling order and discuss same with each other.  These entries are duplicative and unnecessary. Further, a paying client should not have to pay for two lawyers to decide who will engage in tasks going forward.  **Mushkin's hours must be excluded on that date**. (See Exhibit "B").

On June 5, 2009 Lemberg bills 0.3 hours for "TC with opposing re service of complaint and extension to answer."   He also bills 0.3 for "stipulation extending time to answer". However, the stipulation extending time to plead (a one page document) was drafted and filed by Defendant's attorney (Doc. 3).   **The second entry on June 5, 2009, must be excluded as unnecessary**. (See Exhibit "A"). On the same day, Mushkin has an entry for 0.5 for "Don Maurice wants extension of time and c – SL on this."   **Given the time entry already in place for Lemberg, Mushkin's entry is duplicative and unnecessary and must be excluded in its entirety**.   (See Exhibit "B").

On June 11, 2009, Mushkin's bills .2 hours stating "filing of motion for extension of time comes up on…." is not only incomplete and vague, but purely an administrative task. **This entry must be excluded.**  (See Exhibit "B").

On June 15, 2009 Mushkin bills 0.4 for "lengthy notation on PACER of grant of extension of time for D's to plead, check on the document granting extension." This entry is administrative and completely unnecessary given the fact that (a) Lemberg had already consented to the form (Doc. 3) and (b) the document itself is only a 1 page stipulation. In addition, courts have reduced excessive entries for reviewing electronic case filing notifications. See e.g., Ryan, 882 F. Supp. 2d. at 637. **This entire entry should be excluded**. (See Exhibit "B").

On June 22, 2009, Defendant moved for the *pro hac vice* admission of Donald S. Maurice, Jr. (Doc. 6) and the motion was granted on June 25, 2009 (Doc. 7). Nevertheless, on June 25, 2009, Lemberg bills 3.8 hours for

> Don Maurice admit pro hac – research re other cases where Maurice and Needleman represented Ds in class action cases. Noted PA decision and impact on adequacy. Assessed class certification strategies in light of research findings.

The qualifications of *defense* counsel have nothing to do with class certification for the *plaintiff* and motion for *pro hac vice* admission was unopposed. **This entry should be excluded in its entirety**. (See Exhibit "A")

### 3. Hours Related to Answer and Corporate Disclosures (July 8, 2009 thru July 23, 2009)

Defendant filed its answer and corporate disclosure statement on July 8, 2009. (Docs. 8 and 9). That same day, Lemberg bills 3.6 hours to "split work with MM – research on PRA's corporate affiliation re 'net worth' including review of SEC filings." Similarly, the same day, Mushkin is performing the same task, but **block bills 3.8 hours** with reviewing Defendant's Answer maing it impossible to determine how much time was spent reviewing "SEC" filings compared to "examining the answer to complaint":

13

> Rule 7.1 filing by D reveals Portfolio Recovery Associates, LLC as parent.  Search google and EDGAR for that company.   Company is in NASDAQ with extensive disclosures.  Examining answer to complaint.

Further, despite Mr. Mushkin's time entry to the contrary, the Rule 7.1 Corporate Disclosure Statement filed by Defendant identified Portfolio Recovery Associates, **Inc.** as the corporate parent of the actual defendant in this case (Doc. 9).

In addition to performing duplicative work and block billing their review of "SEC" filings in July, the July Lemberg and Mushkin billing entries duplicate work performed two months earlier by Lemberg. On May 7, 2009, Lemberg billed 3.4 hours to "read PRA's most recent SEC filings to familiarize with company, practices, executives." **Both entries of Lemberg and Mushkin are duplicative as well as unnecessary and must be excluded.** (See Exhibits "A" & "B" for details of reduction).

### 4. Hours Related to Generation of Written Discovery and Disclosures (August 11, 2009 thru September 25, 2009)

#### a. Excessive, Duplicative and Inexplicable Hours Related to Drafting Discovery

On August 11, 2009, Lemberg bills 0.9 hours for

> conf S. Schneiderman re discovery; explained what needs to be discovered and what Rogs need to be drafted.

This entry was wholly unnecessary as Lemberg himself billed for the drafting of the interrogatories and discovery requests on August 22, 2009 (6,3 hours) and Schneiderman billed not time drafting discovery.  Similarly, his entry of 0.3 hours on August 17, 2009 for providing instructions to Schniderman in "emails to SS re specific interrogatory and doc request questions" was unnecessary since, again, Schneiderman did not draft discovery. Clearly this is so, as the next day, August 18, 2009, Lemberg made a time entry for "continued work on an finalized

interrogatories and production requests to Defendant" amounting to 2.6 hours. **Therefore, Lemberg's time entries for his August 11, 2009 conference with Schinderman (.9) and August 17th email to her (.3) concerning instructions for drafting discovery must be excluded.** (See Exhibit "A")

Lemberg's time entries for the actual time spent drafting discovery raise additional questions. On August 18, 2009 attorney Lemberg makes a time entry "continued work on and *finalized* interrogatories and production requests to Defendant" (emphasis added) amounting to 2.6 hours. Although the interrogatories and document requests were "finalized" on August 18, 2009, on August 22, 2009 attorney Lemberg makes a time entry for 6.3 hours to "draft discovery (interrogatories, requests for production, requests to admit)". Another time entry is made on September 1, 2009 for 2.2 hours simply noted "requests to admit" without further explanation. The 11.1 hours of vague and confusing time entries surrounding the drafting discovery requests evidences excessive billing. Defendant submits that 5 hours is more than reasonable to draft the discovery requests that were actually served in this matter. **Lemberg's August 18, August 22 and September 1, time entries should be reduced to five (5) hours**. (See Exhibit "A")

### b. Excessive Hours Billed for Routine Tasks

On August 13, 2009, Mushkin bills 0.4 hours to draft a notice of appearance. This entry is excessive for a routine form that requires little, if any, professional skill. **Defendant submits that this entry should be reduced from 0.4 hours to 0.1 hour**. (See Exhibit "B").

### c. Attorney Strategy Conference Shows Different Time Entries

On September 1, 2009, Lemberg bills 0.4 to discuss something unidentified with Mushkin. On September 2, 2009, Mushkin bills 0.9 for going over "proposed joint pre-status

and discovery plan and c. SL on this".  **As this appears to be the same discussion, Mushkin's entry should be reduced from 0.9 to 0.4.** (See ***Exhibit B***).

### d.   Excessive Hours for Plaintiff's Rule 26 Disclosures

On July 23, 2009, attorney Taylor billed 2.2 hours to prepare "Initial Disclosures." Attorney Mushkin entered time of .4 hours on September 14, 2009 to review "proposed Rule 26 disclosure[s]." Attorney Lemberg entered time of .2 hours to "revise initial disclosures" on September 15, 2009. Mushkin performed the same tasks, review of attorney Taylor's draft, that was performed by attorney Lemberg, who also made revisions. Attorney Mushkin's time is excessive, redundant and unnecessary.

On September 25, 2009, attorney Lemberg billed .9 hours to "[r]eview P's initial disclosures; discussion with MM re any additions (.9) . . ." The **block** billing should be excluded.

An amended Rule 26 Disclosure was filed by Plaintiffs on September 28, 2009 (Doc 15). That same day, attorney Mushkin billed .2 hours for "Pleadings our amended R 26 filing made and noted." It was unnecessary for Mushkin to bill his time for review a filed pleading he had previously discussed with attorney Lemberg on September 25 and billed that day for .4 hours.

Therefore, the following time entries should be disregarded:

1) **Lemberg's   September 25 (0.9) entry must be deleted as block billing**. (See Exhibit "A").

2) **Mushkin's entries on September 14 (.4) and September 28 (.4) must be also be excluded**. (See Exhibit "B").

Finally, on September 16, 2009, Lemberg traveled to the Court for a conference at 1.3 hours. **That travel time must be reduced (.65)**. Wilder v. Bernstein, 975 F. Supp. at 284 (See Exhibit "A").

5.    **Hours Related to Plaintiff's Responses to Defendant's Discovery Requests (September 29, 2009 thru December 16, 2009)**

Similarly, Plaintiff's attorneys spent an inordinate amount of time answering simple discovery requests from PRA. Plaintiff's counsel also bills for work for drafting discovery responses days, even weeks after the Plaintiff provided his discovery responses.

It appears from the entries that Mushkin was primarily responsible for the responses and any entries by Lemberg are therefore duplicative, including his discussions with Susan Schneiderman, as there are simply no entries that Ms. Schneiderman even consulted with Mr. Mushkin about the discovery responses.   **Lemberg's entries for 2.3 hours on November 20, 2009 and 1.4 hours for December 15, 2009 must be excluded**. (See Exhibit "A").

In addition to duplicative work, from November 6, 2009 through November 23, 2009, Mushkin devoted 11.3 hours to answering 22 interrogatories and producing documents that had previously been attached to the Complaint.  The billing entries, which were improperly **block** billed, provide little in the way of detail to explain the basis for the significant time devoted to the tasks. **Therefore the entries during this time period must be reduced by 50%.** (See Exhibit "B").

Mushkin's entry on November 24, 2009, to review an order referring the matter to the Magistrate, was purely administrative. **That entry of .2 must be deleted**. (See Exhibit "B").

Further, both Mushkin and Lemberg conducted research on the consequences of failing to respond to requests for admissions. This is redundant and unnecessary in light of the fact that responses were served on Plaintiff.  **Both entries on December 16, 2011 should be deleted (1.4 hours for Mushkin, 2.1 hours for Lemberg.** (See Exhibits "A" and "B").

One final note for this time period. On September 29, 2009, Lemberg billed 3.4 hours for research on the potential individual liability of Catherine Hedgeman for Plaintiff's class claims.

17

This theory was wholly unnecessary as the likelihood of recovery against an individual for class action damages is highly remote. As confirmed by the billing records, Plaintiff took no action against Ms. Hedgeman.  **All 3.4 hours billed on September 29, 2009 must be deleted.** (See Exhibit "A").

6.       **Hours Related to Discovery and Depositions (January 6, 2010 thru April 19, 2010)**

Mushkin's billing on January 6 and 7, 2010 are unnecessary, duplicative or otherwise administrative. On January 6 he billed 0.6 hours for a "discovery status conference coordination" with Lemberg, for a later court conference that Mushkin does not attend.  On January 7, 2010 he bills 0.2 hours to review an ECF notification related to the conference he did not attend.  **Both entries must be deleted**.  (See Exhibit "B").

The January 23 and 25, 2010 entries from Lemberg are block billed as e-mail exchanges with "D's counsel" and in no way explain how much actual time was spent on the communications.  **Both entries must be reduced to 0.2 given their lack of information.** (See Exhibit "A").

On January 25, 2010, Lemberg makes an entry "[a]ssign deposition notices to S.Taylor." The entry provides no further explanation and is purely an administrative task. **0.2 of that entry must be excluded**. (See Exhibit "A")

Again on February 4, 2010, Mushkin bills 0.7 to prepare for a status conference that he does not attend. **This entry must be deleted in its entirety**. (See Exhibit "B").   Similarly, he bills for 0.2 on February 8, 2010 to report on a status conference that he did not attend. **This entry must be deleted in its entirety.** (See Exhibit "B"). On February 17, 2010, Mushkin bills for 0.1 for "deposition dates set", which is purely an administrative calendar entry  and should be deleted in its entirety. (See Exhibit "B").

On February 16, 2010, Lemberg bills 0.4 hours to "review a memo of law on draft summons/complaint".  This memorandum is not related to any other entries and contains no justification for its purpose.  Similarly, Lemberg's entry on the same date for 0.3 hours to arrange for deposition scheduling is an unnecessary administrative expense attributed to an attorney and should deleted in its entirety. **Both entries should be denied**. (See Exhibit "A"). On that same day, Lemberg's block billing of 0.5 hours for "email exchanges with OC re deposition dates" is excessive and unsubstantiated. **This entry must be reduced to 0.2 hours**. (See Exhibit "A").  A similar entry on March 5, 2010 for 0.4 hours of email exchanges regarding deposition scheduling is excessive and unsubstantiated. **This entry must also be reduced to 0.2 hours.** (See Exhibit "A").

Mushkin's calendar entries on February 17 and March 16 for 0.1 and 0.3 hours respectively for scheduling are administrative as well as duplicative. **Both those entries must be excluded in their entirety.** (See Exhibit "B").

The Rule 30(b)(6) depositions of PRA's representatives constitutes the next block of massive overbilling by Plaintiff's attorneys.  After spending over 40 hours to research and draft the complaint, counsel spent an astonishing 38.3 hours to prepare for and attend 2 depositions. Initially, Schneiderman billed 3.0 hours for preparation on March 2, 2010.  Then she bills another 4.9 hours for preparation on March 8, 2010 in addition to the 7.2 hours of travel time and additional prep time while in transit on March 8, 2010.  **All travel time during this period must be reduced by 50%.** (See Exhibit "A")    Schneiderman adds an additional 2.2 hours of preparation time on March 9, the day of the first deposition she conducted – that of Defendant Hedgeman. This makes the total amount of hours 17.3 to prepare for and travel to the depositions

which occurred in Norfolk, Virginia.  This amount is excessive. **Each entry for preparation for the deposition must be reduced by 50%**. (See Exhibit "A").

On March 9, 2010, Schneiderman bills 6.0 hours for the deposition of Hedgeman. This is inaccurate given the notations on the transcript: the deposition started at 10:10 am and ended at 3:42 pm and included a one hour lunch break.  Thus, the deposition itself was only 4.3 hours (5.3 hours including lunch). **This entry must be reduced accordingly**. (See Exhibit "A" also see Declaration of Donald S. Maurice, Jr. in Support of Defendant's Opposition to Plaintiff's Fee Application, ¶¶5-6; Ex. "A" ).   On March 10, 2010, Schneiderman bills 5.0 hours for the continued deposition of Ralph Mesisco.  This deposition began at 9:00 am and concluded at 11:52 am, a total of 2.9 hours.  **The remaining 2.1 hours should be excluded from Schneiderman's entry as an event that simply did not occur**. (See Exhibit "A" and Declaration of Donald S. Maurice, Jr. in Support of Defendant's Opposition to Plaintiff's Fee Application, ¶¶7-8; Ex. "B").

### 7.      Hours Related to Offer of Judgment (March 11, 2010)

Lemberg and Schneiderman jointly engaged in duplicative and excessive work to investigate the Defendant's Rule 68 Offer of Judgment.  First, Lemberg bills 0.7 on March 11, 2010 noted as "Rule 68 offer research and discussion."  Then Schneiderman repeats the research that same day and **block** bills the time entry for 2.4 hours, inclusive of a conference with Lemberg.  **The extent of this research is unspecified and excessive and should be deleted from Schneiderman's billing**. (See Exhibit A)

### 8.      Hours Related to the Scheduling and Taking of the Plaintiff's Deposition (March 15, 2010 thru April 28, 2010)

There are excessive block bills for multiple emails by Lemberg on March 15, 19 and 22 regarding deposition scheduling totaling 1.5 hours.  Each of these entries must be reduced to 0.2.

20

(See Exhibit "A").  On March 22, 2010 both Lemberg and Mushkin bill for a status conference with Judge Davison.  Lemberg bills 0.1 and Mushkin bills 0.5 hours.

Mushkin and Lemberg both bill for the review of the Mesisco and Hedgeman transcripts which is excessive and redundant.  In light of the fact that Lemberg was primarily responsible for the later briefing, those hours should be attributable to him. **4.6 hours on March 26, 2010 must be excluded from Mushkin's billing**. (See Exhibit "B").

Lemberg then engages in an admittedly pointless research project on April 7 and 9, 2010.  On April 7 he **block** bills an entry for "research re class damages" for 0.9 hours. Then on April 9, 2010 he makes an entry for 2.8 hours to "research re ability to amend to add letters sent in other states not just New York.  Not viable, case too deep in discovery."  **Both entries are unnecessary, unreasonable and must be excluded in their entirety.** (See Exhibit "A").

The next excessive and duplicative task was for both Mushkin and Lemberg to spend 5.3 and 7.5 hours respectively to travel to meet Zimmerman on April 19, 2010 to prepare him for his deposition.  Mushkin was the attorney who actually defended the deposition. **The Lemberg entry for 7.5 hours must be deleted in its entirety**. (See Exhibit "A"). **Mushkin's travel must be reduced by 50%.** (See Exhibit "B").

After already billing 5.7 hours to read the Mesisco and Hedgeman transcripts on March 28, 2010, Lemberg repeats this exact same task for 5.5 hours on April 19, 2010.  **This second reading of the deposition transcripts is excessive and duplicative and 5.5 must be deleted in its entirety**. (See Exhibit "A").

On April 19, 2010, Steven Taylor's made an entry to "update prolaw w/ scheduling order".  **This is a purely administrative task and .2 must be deleted**. (See Exhibit "A").

Lemberg's entry on April 22, 2010 for "legal research re precedent for this sort of thing" for 1.9 hours is then duplicated on April 27, 2010 for 1.2 hours.  Not only are these entries redundant but they are vague as to their purpose. **Both entries must be deleted in their entirety**. (See Exhibit "A").

On April 28 and 29, 2010, both Mushkin and Lemberg bill 0.6 hours for a joint letter re discovery and status.  This is a duplicative entry, since the actual letter came from Lemberg. All **Mushkin's entries must be excluded**. (See Exhibit "B").  Moreover, the joint letter was from Plaintiff and Defense counsel and consisted of a single page concerning discovery and mediation. The 0.6 hours expended is excessive. **Lemberg's entry should be reduced to 0.2 hours.** (See Exhibit "A").

Finally, Mushkin's entries on May 3, 2010 regarding PACER entries are unnecessary and administrative. **These entries must be excluded**. (See Exhibit "B"). Similarly, Lemberg's entries on that same date are purely administrative. **These entries must be excluded.** (See Exhibit "A").

### 9. Hours Related to Preparation and Attendance at Mediation (May 14, 2010 thru July 1, 2010)

On June 15, 2010 Lemberg appeared for a settlement conference with Judge Davison and counsel for the Defendant.  Nevertheless, Mushkin billed 2.7 hours for "settlement conference before Davison J. pre and post session discussion in office."  Mushkin did not attend the conference and there is no breakdown of the time for "pre and  post session discussion". **This entry must be excluded in its entirety.** (See Exhibit "B").

### 10. Hours Related to Pre-Motion Letter (July 11, 2010 thru December 2, 2010)

The excessive block billing continued for the remainder of July when Schneiderman and Lemberg combined for 9.6 hours to draft a pre-motion letter with entries simply stating "prepare pre-motion letter," (3.2 hours),  "letter re pre-motion conference and research re same" (2.9 hours) and "finalize and serve pre-motion letter" (3.5 hours).  The total of 9.6 hours for this five page letter is excessive.  **There must be a 50% reduction of hours for both Lemberg and Schneiderman.** (See Exhibit "A").

Mushkin's review of PACER on September 1, 2010 (0.2 hours) regarding the reassignment of the case from Judge Robinson is administrative. **This entry must be excluded**. (See Exhibit "B").

 Similarly, the 1.0 block billing entry on November 12, 2010 by Mushkin for notation that the case had been assigned to Judge Gardephe and "looking up his background" and the November 15, 2010 entry for 0.2 hours regarding the "official" notice of Gardephe's assignment are both unnecessary and excessive.  **These entries must be excluded**. (See Exhibit "B").

After having sent their pre-motion letter in July to Judge Davidson, Schneiderman spent 3 hours on November 11, 2010, revising the letter with little change to the substance of Plaintiff's July request to file a class certification motion and motion for summary judgment. Certainly no explanation is provided in the billing records and the references that the letters are being drafted for "Judge Preska," who was not involved in this case, suggest the billing entries could have been intended for a different matter. The amount of time revising an already existing letter was excessive. **This entry must be reduced to .5 hours.** (See Exhibit "A")

### 11.    Hours Related to Pre-Motion Conference (January 2011)

Mushkin's excessive and unnecessary billing continued on January 5, 2011 when he billed 0.4 hours for another endorsed ECF letter.  The body letter in question (Doc No. 29) states,

in its entirety "This letter serves to confirm that Your Honor has scheduled a pre-motion conference for Wednesday, January 19, 2010 at 2:30 p.m.  I have forwarded a copy of this letter to plaintiff's counsel by email."  The endorsement states, in its entirety "A conference will take place at the time and date indicated in this letter."  This 0.4 hour entry is excessive, unnecessary and administrative. **This entry must be deleted in its entirety**. (See Exhibit "B").

This pattern continued two weeks later when attorney Mushkin billed 0.4 hours to review the January 19 Pre-Motion Order.  (Doc. No. 30). This review was wholly unnecessary.  **The 0.4 hours must be deleted in its entirety.** (See Exhibit "B").

As for the conference itself on January 19, 2011, Lemberg's travel time must be reduced by 50%. (See Exhibit "B").

Mushkin's entry on January 24, 2011 for review of notice of appearance by additional counsel for defendant, Rachel Martin [sic] looking for her background should be deleted as excessive and unnecessary. His January 30, 2011 review of the Judge's amended briefing scheduled and claim form was equally unnecessary. **Both these entries must be excluded**. (See Exhibit "B").

### 12.    Hours Related to Class Certification Motion, Summary Judgment Motion and Opposition (February 2, 2011 thru April 25, 2011)

Plaintiff's attorneys then billed 53.0 hours to draft the class certification motion and 61.7 hours to draft the motion for summary judgment.  The majority of the entries are completely devoid of any description of the actual work performed other than impermissibly block billed as "MSJ work" or "work on MSJ" or "additional work on SJ motion." See Carrasco v. West Vill. Ritz Corp., 2012 U.S. Dist. LEXIS 95596 (S.D.N.Y., Jul. 11, 2012) (disapproving of similar block billing and eliminating the entries from the fee award).

24

The actual memorandum of law in support of the motion for class certification was only 13 pages and includes a 4 page certification from Plaintiff that was also used in support of the motion for summary judgment. A declaration of Susan Schneiderman contained all of the exhibits used to support both motions. Finally, there is a 2 page generic declaration of Sergei Lemberg with his firm's resume as an attachment.

Despite the hours allegedly spent on the class certification, Counsel failed to actually proof the motion. Page 10 of the Plaintiff's brief states: "[WILL ADD STUFF – THIS WAS TAKEN FROM ANOTHER MOTION]." (See Plaintiff's brief; Doc No. 34). Requesting this amount of time for what appears to be "boiler plate" work is unreasonable. Of those 53.0 hours, 27.8 were billed by Schneiderman, 13.1 billed by Lemberg and 12.1 billed by Mushkin. Mushkin's entries however are also lumped together with his entries regarding review of the summary judgment motion: "review of revised motion papers" or "edits of motion papers" etc. **Counsel's time must be reduced by 50% for the time relating to the class certification motion**. (See Exhibits "A" & "B"). Similarly, there is 61.7 hours claimed on the summary judgment motion, 55.0 were billed by Schneiderman, 4.4 by Lemberg and 2.3 by Mushkin (this entry was specific to the summary judgment motion). As with the class certification motion, the excessive hours are unreasonable and the records are extremely vague as to the work performed. **Counsel's time must also be reduced by 50% for the time relating to the summary judgment motion.** (See Exhibits "A" & "B").

Finally, after having thoroughly reviewed all motions before they were filed, on February 18, 2012, Mushkin bills 2.1 hours to review the *filed* motions. This is unreasonable and unnecessary. **This entry must be excluded**. (See Exhibit "B").

On April 18, 2011, after the motions were filed, Mushkin bills 0.2 hours to note that Plaintiff's extension of time to reply had been granted and 0.2 hours to discuss with unnamed persons the length of time needed to reply. **These entries were administrative and unnecessary**. (See Exhibit "B").

Thereafter from April 6 through April 25, Lemberg, Mushkin and Taylor combine for another 70.3 hours to review PRA's opposition to their motions and draft their replies. As with the initial motions, the entries consist entirely of impermissible **block** billing entries with little to no explanation of what was actually done other than "draft MSJ reply" or "worked on certification reply." See Carrasco v. West Vill. Ritz Corp., 2012 U.S. Dist. LEXIS 95596 (S.D.N.Y., Jul. 11, 2012). Plaintiff's reply briefs each have 10 pages of substantive argument largely repeating or reaffirming the arguments made in the initial motions. Given the foregoing excesses, at this point, the accuracy of Plaintiff's attorneys billing records has to be called into question. For some reason, Schneiderman and Lemberg both bill to review the opposition briefs and discuss them, yet Schneiderman had no involvement in drafting of the replies. Lemberg bills 1.5 hours for "research for motion for class certification." As if designed to run afoul of the principles against block billing from Carrasco v. West Vill. Ritz Corp., 2012 U.S. Dist. LEXIS 95596 (S.D.N.Y., Jul. 11, 2012), Taylor then block bills 5.9 and 7.8 hours to "draft MSJ reply." He adds another 6.9 hours for "revision of MSJ reply brief" before moving on to the class certification briefs with blocks of 8.2 and 7.7 hours for "draft class certification reply" and "worked on certification reply." Lemberg then gets involved with a block of 8.5 hours to "review and revise, plus additional research on reply re summary judgment (4.1) same re class certification (4.4). In total, of the 70.3 hours claimed to review the oppositions and prepare the replies, 43.5 were billed by Taylor, 15.6 by Lemberg, 8.6 by Mushkin and 2.6 by Schneiderman.

As with the initial motions, the unspecified **block** billing is excessive, redundant and unreasonable. **Counsel's time must also be reduced by 50% for the time relating to the replies to the Defendant's Opposition.** (See Exhibit "A" & "B").

### 13. Hours Related after Class Certification and Summary Judgment Orders Entered; Class Notice (September 15, 2011 thru December 22, 2011)

After the court issued its order on class certification and summary judgment Lemberg, Mushkin and Taylor all billed to read the opinion separately. However, Mushkin spent 0.8 hours to reading the orders on September 15, 2011 and then billed 1.5 hours the next day to reread them. **The second Mushkin entry must be deleted in its entirety as duplicative.** (See Exhibit "B").

Lemberg and Taylor then spend a combined 12.1 hours to draft a three page proposed class notice, 2.5 hours for Taylor and 9.6 hours for Lemberg. These entries are unreasonable and duplicative. **These entries must be reduced by 50%.** (See Exhibit "A").

On September 26, 2011, Mushkin reviews the Court's order of the same date (containing three sentences) regarding class notice, even though his colleagues Lemberg and Taylor had been working on the notice the week prior. Mushkin bills .4 hours for this efforts. **This entry is unnecessary and must be excluded**. (See Exhibit "B"). Additionally on September 30, 2011, Mushkin spends 1.8 hours to review Defendant's objection to the class notice but does not engage in any other activities related to the class notice. His review of the opposition was unnecessary. **This entry must be excluded**. (See Exhibit "B").

On November 9, 2011, Lemberg, Mushkin and Taylor spent 2.9 hours discussing the Court's class notice. This is unreasonable and duplicative. **Entries for Lemberg must be reduced to 1.2 hours comparable with Mushkin.** (See Exhibit "A").

On December 13, 2011, Taylor spent 3.1 hours drafting a letter to the Court "re notice". No other explanation is provided. This amount of time is unreasonable. **This entry must be reduced by 50%.** (See Exhibit "A"). Thereafter, from December 14 to 21, 2011, Lemberg and Taylor spent 8.4 hours reviewing a letter to the court from PRA's counsel and drafting a response. As part of the 8.4 hours, on December 21, 2011, Taylor billed 3.7 hours drafting a letter of the same date, slightly more than two pages long. On the same day, Lemberg **block** billed 2.9 hours with this notation

> Reviewed ST's draft; provided comments; looked back at research I had done including review of cases cited by D; proof-read final letter to the judge

Little explanation is given as to why Taylor and Lemberg billed such excessive amounts and Lemberg's **block** billing only serves to further obfuscate the billing entries. **These entries must be reduced by 50%.** (See Exhibit "A").

### 14. Hours Related to Communications with Claims Agent (January 31, 2012 through April 5, 2012)

Once the class notice issue was resolved, Lemberg then has multiple block billing entries for communications with the claims agent that make it impossible to determine how much time was actually spent. Billing records show that on February 3, 2012, 2.4 hours were billed by Lemberg with the description for "multiple communications." On February 6, 2012, 0.3 hours to review emails from S. Tsai re notice procedure, respond to same." On February 14, 2012, 1.2 hours for "multiple communications with claim admin re notice, addresses, judge's requirements, etc." In addition, Lemberg block bills 0.9 hours on February 24, 2012 as "spoke with multiple class members calling for information, walked them through requirements." These entries are vague and unreliable. **Hours for this period must be reduced by 50%.** (See Exhibit "A").

### 15.   Hours Related to Damages Plaintiff's Damages Motion and Response (April 11, 2012 thru May 15, 2012)

Pursuant to the above time period, Plaintiff's attorneys spent 54.0 hours of primarily block billing, in 6 to 8 hour increments, to draft their damages motion.

In total, of the 54.0 hours claimed to prepare their motion, 34.7 were billed by Taylor, 12.7 by Lemberg and 6.6 by Mushkin.  As with the initial motions, the unspecified block billing is excessive and unreasonable. **These entries must be reduced by 50%**. (See Exhibit "A" & "B").  In addition, Mushkin's review of court notations on April 23 and April 24 are unnecessary and administrative. **Those entries must be excluded**. (See Exhibit "B").

Plaintiff's attorneys' review and reply process was equally inefficient and excessive.  In total 41.9 hours were spent to review the opposition and draft a brief reply.  Block billing again precludes any real objective analysis of what was really done by the Plaintiff's attorneys.  For example Taylor bills 6.9 hours for "Research and draft reply" on May 10, 2012.  Lemberg bills 8.7 hours on May 11, 2012 to "work on reply to class damages brief."  Taylor also bills 7.2 hours to "work on reply" on May 11, 2012.  Of the 41.9 hours claimed to review the opposition and prepare the reply, 20.2 were billed by Taylor, 17.2 by Lemberg and 4.5 by Mushkin.  As with the initial motions, the absence of any detail in what was done other than to "work on" or "draft" a brief renders the billing excessive, duplicative and unnecessary. **These entries must be reduced by 50%**. (See Exhibits "A" & "B").

After the replies were completed, the following administrative tasks were billed by "AB" and should be deleted in their entirety. (See Exhibit "A").  The entries for JDF must also be deleted because Plaintiff has failed to supply any affidavits in support of her hourly rate.

### 16.   Hours Related to Hearing on Damages (June 19, 2012 thru June 28, 2012)

After the court scheduled a hearing on the damages issue, Taylor unnecessarily billed for preparation (2.7 hours on June 27, 2012) travel (3.0 hours on June 28, 2012) and attendance (1.0 hours on June 28, 2012) at a hearing that (while physically present) he did not actually participate. Furthermore, Lemberg already billed for this work. **Taylor's entries therefore must be excluded as duplicated.** (See Exhibit "A"). **Lemberg's travel must be reduced by 50%.** (See Exhibit "A")   On June 27, 2012, Mushkin also billed 1.3 hours to prepare for this hearing, which he did not attend. This work was therefore unnecessary and duplicative. **This entry must be excluded**. (See Exhibit "B").

### 17.     Hours Related to Plaintiff's Response to Defendant's Motion to Decertify the Class (July 2, 2012 thru July 13, 2012)

In response to Defendant's Motion to Decertify the Class, Taylor, Lemberg and Mushkin billed 40.4 hours of unspecified block billing with notations such as "work on opp to decertify" and "review and revise opposition decertification.   These entries are unreasonable and duplicative. A 50% reduction must be given for these entries. (See Exhibits "A" & "B") Mushkin's entry of 1.1 hours on July 13, 2012 to review the paper that had already been filed on July 12, 2012 should be deleted in its entirety as unnecessary and excessive. (See Exhibit "B") .

### 18.     Hours Related to Mediation (July 31, 2012)

On July 31, 2012, the parties attended mediation.  Lemberg billed 4.8 hours to prepare, travel to and attend mediation.  **Travel must be reduced by 50%.** (See Exhibit "A"). Mushkin's entry of 5.0 hours on the same day for preparation and discussion regarding mediation is excessive and duplicative of the Lemberg entries as well as unnecessary as he did not even attend the mediation. **This entry must be excluded**. (See Exhibit "B").

### 19.     Hours Related to Plaintiff's Supplemental Briefings and Opposition (August 3, 2012 thru September 24, 2012)

After mediation, Plaintiff's counsel filed a supplemental briefing in response to Defendant's motion for decertification. The 49.6 hours were devoted to this effort. Lemberg, himself, personally billed 35.4 hours to draft the supplemental brief and photocopy documents from the library. The unreasonable amount of billing entries is evident with the 8.0 hours billed on August 8, 2012 for "additional work on Jerman section of the supplemental brief." There was no "Jerman section" of Plaintiff's supplemental brief. The brief references to the facts in Jerman on pages 4-5 and later references to the case on pages 11, 12, 14 and 15 among discussion of other cases (Doc No. 74). Similar time entries for "work on supplemental brief" and "work on supplemental brief" are excessive entries in light of the actual work product produced. **These entries require a 50% reduction for all counsel.** (See Exhibits "A" & "B").

Mushkin's 0.5 hours on August 9, 2012 to read the supplemental brief after it was filed was unnecessary. **That entry must be excluded**. (See Exhibit "B").

Finally, Plaintiff's attorneys packaged 25.4 block billed nonspecific hours to draft their reply brief. **A 50% reduction is appropriate for the same reasons as the briefs noted above.** (See Exhibits "A" & "B").

### 20. Hours Related to Review of Court's Order (March 27, 2013 thru April 5, 2013)

Thereafter, on March 27, 2013, Mushkin unnecessarily bills 0.2 hours to review the notice of appearance filed by his co-counsel Taylor. **This entry must be excluded**. (See Exhibit "B"). He also unnecessarily bills 0.4 hours on April 2, 2013 to read the Court's Order three (3) sentence order. (Doc No. 81) **This entry must be deleted as unnecessary.** (See Exhibit "B").

### 21. Hours Related to Preparation of Fee Petitions

The request for attorney's fees includes 22.2 hours for fees related to the fee petition itself. Mushkin bills 3.0 hours for a 2 page affidavit and printout of his resume and printout of

time billed.  This is unreasonable in light of the work produced. **Mushkin's hours must be reduced by 50%.** (See Exhibit "B").   Lemberg bills 5.5 hours to review time entries and prepare the fee petition.   These entries are reasonable. However, Taylor bills 13.7 hours to "begin draft of fee petition" and "work on fee petition". **These entries are duplicative, vague block billings and not reasonable. Taylor's entries must be excluded.** (See Exhibit "A").

## II.   THERE IS NO BASIS FOR AN ENHANCEMENT OF THE LODESTAR. RATHER, THE GROSS AND OBVIOUS EXCESSIVE AND UNNECESSARY OVERBILLING WARRANTS A SIGNIFICANT REDUCTION OF THE FEES CLAIMED AS NOTED IN THE LODESTAR CALCULATION

Plaintiff cites to Gross v. Wash. Mut. Bank, F.A., 2006 U.S. Dist. LEXIS 16975 (E.D.N.Y. Feb. 9, 2006) to support his claim for a lodestar multiplier.   Gross is entirely inapplicable to the case at bar as it involved an agreed upon attorney fee multiplier as part of the parties' settlement agreement.   In addition, the fee award in Gross included fees for work that had not yet been performed and was only estimated by counsel.   Reliance on Goldberger v. Integrated Res., Inc., 209 F. 3d 43 (2nd Cir. 2000) is also misplaced as Goldberger predates Perdue's instructions to save lodestar enhancements for "rare" and "exceptional" circumstances:

> we have repeatedly said that enhancements may be awarded in "rare" and "exceptional" circumstances. Fourth, we have noted that "the lodestar figure includes most, if not all of the relevant factors constituting a 'reasonable' attorney's fee" and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation.  We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because those factors "presumably are fully reflected in the number of billable hours recorded by counsel.  We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "because considerations concerning the quality of a prevailing party's counsel's

> representation are normally are reflected in the reasonable
> hourly rate.

Perdue, 130 S. Ct. at 1672-73.

In light of Perdue, Plaintiff's attorneys need to identify the rare and exceptional circumstances to justify an enhancement to the lodestar.  As noted in the arguments above, there is an inordinate amount of excessive, vague and unnecessary time entries that need to be reduced from the "hours reasonably expended."  Given counsel's propensity to bill 0.4 hours to read one page letters and 50+ hours for briefs containing the statement "[WILL ADD STUFF – THIS WAS TAKEN FROM ANOTHER MOTION]" there is simply no basis to argue that this is one of the "rare" or "exceptional" cases to award a multiplier or enhancement.

### III.   PLAINTIFF HAS NOT PROVIDED ANY PROOF TO SUBSTANTIATE HIS "COSTS" INCURRED

Other than reference in the Lemberg declaration to an exhibit listing "costs" Plaintiff has offered no proofs to substantiate any of these actual costs, whether they were actually paid or for what they were incurred.  In Harris v. Fairweather, 2012 U.S. Dist. LEXIS 128409 (S.D.N.Y. Sep. 10, 2012) the court rejected costs that were not substantiated by Plaintiff's attorneys.  PRA does not object to the court filing fee or process server fees.  However there is no description, receipt or proof of payment of $424.90 neither for "airline" nor for the $113.99 for "hotel."  Assuming that they are related to Schneiderman's travel, her unsubstantiated charge of $164.80 for "meals, car parking" is excessive considering that it exceeds the cost of her hotel room.  However, absent any proof of these travel expenses, they all should be denied.

Similarly, there is no proof of a charge against which payment of $1,742.25 for transcripts was made nor is there any breakdown of the costs which may be unnecessary (such as ordering unnecessary extra copies of transcripts).

The "outside copying" charges of $417.01 and $55.02 are unsubstantiated and there is no way to determine what these charges were incurred for or whether they were reasonable.

FedEx charges of $18.15, $19.42, $20.26 and $18.61 are unsubstantiated and there is no explanation of what these fees were incurred for.

Similarly, the "US Mail" charge of $8.68 should be excluded as again, there is no proof of the charge or explanation for why it was incurred.

The charge for "PC Supplies" of $31.20 is unsubstantiated and unnecessary.  No client should have to pay separately for its attorneys' ordinary consumable office supplies.

Finally the "internal copying count (.20 cents copy) for 6,567 pages totaling $1,313.40 is excessive and unsubstantiated and is not contemporaneous to the time these alleged "copying costs were incurred.

With the exception of the court filing fee and process server fee (a total of $395), the remaining costs should all be excluded.


## CONCLUSION


Plaintiff's fee petition includes text-book examples of block billing, duplicative billing, administrative billing and otherwise excessive and unsubstantiated fees and charges.

The hourly rates claimed are not customary and typical rates allowed for FDCPA attorneys within this district. Recent decisions within this District have found that attorney Lemberg's hourly rate is $300.00., which rate is typical for attorneys of his experience in

FDCPA litigation. Attorney Mushkin, while having practiced far longer than attorney Lemberg, has little or no experience in FDCPA litigation. Plaintiff's fee petition concedes it is reasonable to bill both attorneys Lemberg and Mushkin at the same rate. Mushkin's rate should also be set at $300.00.

Attorneys Schneiderman and Taylor have stated they have limited experience litigating FDCPA cases as associates in the Lemberg firm. An hourly rate of $225.00 is consistent with rates established in this District for attorneys of similar experience.[4]

Mushkin's compensable fees are $21,345.00. Lemberg & Associates compensable fees are $94,541.25. Compensable costs are $395.00. The total award should be $116,281.25.

Respectfully Submitted,

By: */s/ Donald S. Maurice*
Donald S. Maurice, Esq.
Maurice & Needleman, P.C.
Attorney for Defendant
Portfolio Recovery Associates, LLC
5 Walter E. Foran Blvd., Suite 2007
Flemington, NJ 08822
(908) 237-4550
(908) 237-4551
dsm@mnlawpc.com

By: */s/ Thomas R. Dominczyk*
Thomas R. Dominczyk
Maurice & Needleman, P.C.
Attorney for Defendant
Portfolio Recovery Associates, LLC

---

[4] Schneiderman received an hourly rate of $120 in the Northern District of New York, but it appears this was based on her failure to submit details of her professional experience. <u>Van Echaute v. Law Office of Thomas Landis</u>, 2011 U.S. Dist. LEXIS 34463 (N.D.N.Y Mar. 31, 2011).

5 Walter E. Foran Blvd., Suite 2007
Flemington, NJ 08822
(908) 237-4550
(908) 237-4551
trd@mnlawpc.com

Dated: May 10, 2013