UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON ZIMMERMAN,

             Plaintiff,

      -against-

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

             Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/12/13_____

**MEMORANDUM
OPINION & ORDER**

09 Civ. 4602 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiff Jason Zimmerman claims that Defendant Portfolio Recovery Associates, LLC ("PRA") violated the Fair Debt Collection Practices Act ("FDCPA"). On September 15, 2011, this Court granted Plaintiff's motion for summary judgment and class certification, Zimmerman v. Portfolio Recovery Assocs., LLC, 276 F.R.D. 174 (S.D.N.Y. 2011), and on March 27, 2013, this Court granted Plaintiff's motion for statutory damages and authorized a class award of $350,000. Zimmerman v. Portfolio Recovery Assocs., LLC, No. 09 Civ. 4602 (PGG), 2013 WL 1245552, at *7 (S.D.N.Y. Mar. 27, 2013). In its March 27, 2013 memorandum opinion and order, this Court directed the parties to submit (1) supplemental briefing to address whether thirteen individuals who submitted vague or incomplete claim forms should be granted a share of the award, and (2) a joint list of organizations that would be appropriate recipients of the cy pres portion of the award. Id. at *7-8.

After considering the parties' supplemental submissions, and for the reasons stated below, seven of the thirteen individuals at issue will be granted a share of the class award, and the cy pres portion of the award will be distributed to the seven organizations proposed by Plaintiff.

This opinion also addresses Plaintiff's motion for an award of attorneys' fees and costs.

## BACKGROUND[1]

On September 15, 2011, this Court granted Plaintiff's motion for summary judgment and class certification, holding that PRA had violated the FDCPA by sending a "Pre-Suit Package" – debt collection documents simulating official court papers – to Zimmerman and other debtors. Zimmerman, 276 F.R.D. 174. The Court also granted Zimmerman's motion for certification of a class of approximately 990 people, comprised of

> all consumers to whom the Defendant sent, within one year of the commencement of this action, a demand for payment letter on Portfolio Recovery Associates, LLC letterhead – signed by Catherine M. Hedgeman, Esq. – and enclosing a draft summons and complaint in a form materially identical or substantially similar to the "Pre-Suit Package" sent to Jason P. Zimmerman, and which was not returned as undeliverable by the Postal Service.

Id. at 180-81.

A class action administrator subsequently sent all class members a Class Notice with an attached Claim Form. Zimmerman, 2013 WL 1245552, at *1. The Class Notice instructed recipients: "If you wish to participate in class recovery complete and return the attached 'Claim Form' to remain a member of the Class." (Apr. 23, 2012 Lemberg Decl. (Dkt. No. 57), Ex. F) The Claim Form further directed those recipients who wished to participate in the class recovery to attach documentation or include a brief explanation of the type of debt PRA had attempted to collect from them.[2] Zimmerman, 2013 WL 1245552, at *1. Those recipients

---

[1] Familiarity with this Court's prior orders in this action is presumed.

[2] Pursuant to the Court's January 27, 2013 order, the Claim Form states:

> Attach a copy of an account statement, receipt, invoice, canceled check, or other documentation concerning any debt you believe Portfolio Recovery Associates, LLC ("PRA") attempted to collect from you. If you do not have any such documents, then provide a brief explanation of the debt which you believe PRA

who wished to be excluded from the class were instructed to complete and return the "Request to
be Excluded as a Class Member" portion of the Claim Form. Id.

On March 27, 2013, this Court granted a class award of $350,000, to be
distributed in $500 payments to class members who completed and submitted a Claim Form. Id.
at *7. The Court further ruled that the remainder of the class award, as well as any payments not
cashed by claimants within 90 days, would be distributed as a cy pres award to a non-profit
organization working to curb abusive debt collection practices or to increase consumer
awareness of such practices. Id. at *7-8.

Thirty-three individuals returned claim forms. Id. at *1. Four individuals
returned only the "Request to be Excluded as a Class Member" portion of the form. Id. These
four individuals have been excluded from the class and are not eligible to receive a share of the
class award. Id. at *4-5.

Fourteen claimants timely returned the portion of the form requesting information
about their debts and provided sufficient information for the Court to determine that the debts
were incurred for personal, family, or household purposes.[3] Id. at *1; (see also Apr. 11, 2013
Taylor Decl. (Dkt. No. 82), Ex. A) Two individuals timely returned both portions of the claim
form, but provided sufficient information for the Court to determine that they wished to remain

---

attempted to collect from you, and include the following information: (1) the type
of debt (e.g., a credit card, an automobile loan, a loan for medical services, or a
business loan); (2) a description of the money, property, services, or insurance
that debt was used to acquire; and (3) whether the money, property, services, or
insurance was acquired primarily for personal, family, or household purposes or
for a business purpose.

(Jan. 27, 2013 order (Dkt. No. 53); see also Apr. 23, 2012 Lemberg Decl. (Dkt. No. 57),
Ex. F)
[3] These claimants are Cathcart, Hinkley, Johnson, Judson, Kane, Kavulich, Mundell, Schatt,
Simmons, Smith, Spencer, Swygert, Tortorili, and Walters.

in the class and that their debts were non-commercial in nature.[4]  Zimmerman, 2013 WL 1245552, at *1; (see also Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. A)  As provided in the March 27, 2013 memorandum opinion and order, these sixteen individuals are entitled to a $500 share of the class award.  Zimmerman, 2013 WL 1245552, at *7.

The remaining thirteen individuals completed either both portions of the form, or only the portion of the form asking for a description of the debts, without providing sufficient information for the Court to determine that their debts were non-commercial.[5]  Id. at *1; (see also Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Exs. B, C)  Eight of these 13 individuals submitted supplemental letters to clarify that they wished to be included in the class and/or to clarify that their debts were non-commercial, but those letters were submitted after the due date stated on the Claim Form.[6]  Zimmerman, 2013 WL 1245552, at *1; (see also Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. B)  According to Plaintiff, these eight individuals submitted the supplemental letters after they were contacted and advised of the deficiencies in their claim forms.  (Apr. 11, 2013 Pltf. Br. (Dkt. No. 82) at 3 n.4)  Plaintiff asserts that all claimants who submitted vague or incomplete claim forms, and who provided their phone numbers on the form, were contacted. (Id.)

As noted above, the March 27, 2013 memorandum opinion and order directs the parties to submit (1) supplemental briefing addressing the thirteen claim submissions that are vague or incomplete, and (2) a list of organizations that would be appropriate recipients of a cy pres award. Zimmerman, 2013 WL 1245552, at *7-8. In his supplemental briefing, Plaintiff argues that all thirteen individuals should participate in class recovery, and requests that the cy

---

[4]  These claimants are Burgos and Sotto.

[5]  These claimants are Brown, Cox, Fadden, Ford, Haggerty, Hatzialexandr, Hinds, Jones, Moore, Morrison, Panarella, Thomas, and Webber.

[6]  These claimants are Brown, Cox, Ford, Jones, Moore, Morrison, Panarella, and Thomas.

4

pres award be distributed among five New York area organizations and two national

organizations. (Apr. 11, 2013 Pltf. Br. (Dkt. No. 82) at 2-5)  PRA submitted a supplemental

memorandum stating that it "takes no position on [the] issue [of whether the thirteen individuals

should participate in class recovery] and leaves distribution to these individuals to the discretion

of the court." (Def. Supp. Br. (Dkt. No. 83) at 1)  PRA opposes distributions to the two national

organizations and one of the New York area organizations proposed by Plaintiff, however. (Id.

at 1-2)

On May 3, 2013, Plaintiff moved for an award of attorneys' fees and costs

pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(3). (Dkt. No. 86)  Plaintiff seeks $433,541.60 in

fees and $4,742.69 in costs. (Id.)

## DISCUSSION

## I. INDIVIDUAL CLAIMANTS

### A. The Supplemental Letters Submitted by Claimants Will be Considered

A district court overseeing the distribution of a class action award has "inherent

power" to accept a late-submitted claim and should consider the equities in determining whether

to allow the claim. Zients v. LaMorte, 459 F.2d 628, 628-31 (2d Cir. 1972).

> In determining whether to accept a late claim, courts consider whether the
> untimeliness was the result of excusable neglect weighing the following pertinent
> factors enunciated by the Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick
> Assocs. Ltd. P'ship, 507 U.S. 380 (1993): 1) the danger of prejudice; 2) the
> length of the delay and its impact on the proceedings; 3) the reason for the delay,
> including whether it was within the control of the movant; and 4) whether the
> movant acted in good faith.

In re Nigeria Charter Flights Litig., No. MDL 2004-1613 (RJD) (MDG), 2013 WL 1788530, at

*2 (E.D.N.Y. Apr. 26, 2013); see also Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be

5

done within a specified time, the court may, for good cause, extend the time[ ] . . . on [a] motion made after the time has expired if the party failed to act because of excusable neglect.").

Here, the Pioneer factors weigh in favor of considering the eight late-submitted supplemental letters. First, PRA will not be prejudiced if these eight individuals are permitted to share in the class award, because the total amount of the class award is fixed at $350,000. Zimmerman, 2013 WL 1245552, at *7. Second, the supplemental letters were submitted within six weeks of the claim submission deadline, and long before Plaintiff's motion for statutory damages was decided. (See Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. B)

As to the reason for the delay, Plaintiff asserts that it reflects claimants' initial misunderstanding of the claim form. (Apr. 11, 2013 Pltf. Br. (Dkt. No. 82) at 3) Statements in the claimants' supplemental letters support this argument. (See Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. B (Jones Ltr. ("I'm sending this respon[se] [b]ecause I mistak[en]ly sign[ed] the wrong [b]ox on my class action [form] . . ."); Apr. 18, 2012 Morrison Ltr. ("This is a supplement[al] letter to the Zimmerman class action, in which I signed both sides by mistake."); Panarella Ltr. ("I am writing to let you know that I did not intend to sign a document excluding myself from the Zimmerman class action. I did not realize I signed a document to exclude myself.")))

Moreover, there is no evidence of bad faith. The eight claimants submitted their original claim forms before the deadline and only submitted supplemental materials to clarify confusing entries in those original forms. (See id., Exs. A-B) In any event, PRA does not dispute that the eight late-submitted letters should be considered. (Def. Supp. Br. (Dkt. No. 83) at 1) The Court concludes that – as to the eight individuals who submitted supplemental claim

letters – their untimeliness was the result of excusable neglect, and the Court will consider their supplemental letters in determining whether they will share in the class award.

### B. Seven of the Thirteen Claimants at Issue Have Sufficiently Demonstrated the Nature of Their Debt

As the Court stated in its March 27, 2013 memorandum opinion and order, because the FDCPA only addresses efforts to collect non-commercial debts, "it is appropriate to require class members to provide information demonstrating the nature of their debts at the damages phase of the case as a condition to sharing in any class recovery." Zimmerman, 2013 WL 1245552, at *4 (internal quotations and citations omitted). Seven of the eight supplemental letters provide sufficient information for the Court to determine that the debts were incurred for personal, family, or household purposes. (See Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. B) Accordingly, the seven claimants who submitted these letters will share in the class recovery.[7]

In the eighth supplemental letter, the claimant states: "I'm sending this respon[se] [b]ecause I mistak[en]ly sign[ed] the wrong [b]ox on my class action [form] against . . . Portfolio[.]  Be [a]dvised to change my answer to yes[.]  I'm engaging in the class suit[.]  Also the debt for for [sic] is loan credit card." (Id., Ex. B (Jones Claim))  While this letter makes clear that the claimant wishes to participate in the class recovery, and that the claimant had "credit card" debts, it does not demonstrate that the claimant's debts were incurred for personal, family, or household purposes.  Accordingly, the claim will be disallowed.[8]

---

[7]  These claimants are Brown, Cox, Ford, Moore, Morrison, Panarella, and Thomas.  (See Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. B)
[8]  This claimant is Jones.  (Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. B (Jones Claim))

The remaining five claimants did not submit supplemental letters asserting that their debts were incurred for personal, as opposed to business, purposes.[9] (Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. C)  Four of the claimants state that their debts were incurred in connection with credit card usage.[10] (See id.)  However, because credit cards can be used for business as well as personal, family or household purposes, these claimants have not submitted proper documentation showing that their debts were for personal purposes.[11]

Plaintiff argues, however, that the five claimants who did not submit supplemental letters should nonetheless be allowed to share in the class recovery, because PRA admitted that it sent the Pre-Suit Packages to "consumers." (Apr. 11, 2013 Pltf. Br. (Dkt. No. 82) at 4)  While PRA's admission supports the Court's conclusion that class certification is appropriate, see Zimmerman, 2013 WL 1245552, at *4 n.13, claimants are a distinct sub-group of class members who submit a claim form, and only claimants who do so with the proper documentation are eligible to share in the class recovery. See id. at *4.  Accordingly, the five claimants who did not submit sufficient documentation to show that their debts were for personal purposes will not be permitted to share in the class recovery.[12]

---

[9] These are claimants Fadden, Haggerty, Hatzialexandr, Hinds, and Weber. (See Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. C)

[10] These claimants are Fadden, Haggerty, Hinds, and Weber. (See Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. C)  Although claimant Hinds states that his debts relate to a cell phone and a telephone, he does not specify whether he used the cell phone and telephone for personal, family, or household purposes, or business purposes. (Id., Ex. C (Mar. 12, 2012 Hinds Claim))

[11] Plaintiff contends that these claimants are comparable to claimant Schatt, who the Court has permitted to share in the class recovery. (Apr. 11, 2013 Pltf. Br. (Dkt. No. 82) at 4)  However, Schatt submitted a letter stating that she used the credit card "for purely personal use." (See id., Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. A (Apr. 18, 2012 Schatt Ltr.))

[12] The fifth claimant submitted a document that purports to be a complaint against him filed by PRA in Bronx County Supreme Court related to "Consumer Credit Debt." (Apr. 11, 2013 Taylor Decl. (Dkt. No. 82), Ex. C (Hatzialexandr Claim))  As discussed above, PRA's assertion in the purported complaint that its claims are against "consumers" is not sufficient to show the nature of the claimant's debt for purposes of sharing in the class recovery.

## II.    CY PRES AWARD

In the March 27, 2013 memorandum opinion and order, this Court found that a cy pres award is appropriate in order to ensure that successful claimants do not receive a windfall inconsistent with the nature of the injury they suffered. Id. at *7-8. The Court ruled that the cy pres award will be distributed to a non-profit organization working to curb abusive debt collection practices or to increase consumer awareness of such practices, and ordered the parties to submit a joint list of organizations that would be appropriate recipients. Id. at *8.

Plaintiff submitted a list of seven potential recipients – five organizations based in New York and two national organizations.[13]  (Apr. 11, 2013 Pltf. Br. (Dkt. No. 82) at 5)  Plaintiff argues that a distribution granting one-sixth of the cy pres award to each of the five New York organizations and one-twelfth to each of the national organizations "strikes the correct balance to aid New York consumers locally while at the same time furthering their interests and protections through national advocacy of consumer rights." (Id.)

Defendant "vehemently opposes" distributions to the two national organizations, because "[t]he class consists solely of New York residents and there is no indication . . . that [the two national organizations] . . . would . . . utilize[] [the cy pres award] to assist New York residents including members of the class." (Def. Supp. Br. (Dkt. No. 83) at 1-2)  Defendant also opposes a distribution to CAMBA Legal Services, arguing that "the proposals submitted by the other four [New York] entities would better serve the issues identified by the [C]ourt." (Id. at 2)

---

[13] The in-state organizations are the Empire Justice Center (Rochester, New York), the Legal Aid Society (New York, New York), the Neighborhood Economic Development Advocacy Project (New York, New York), South Brooklyn Legal Services (Brooklyn, New York), and CAMBA Legal Services (Brooklyn, New York). (Apr. 11, 2013 Pltf. Br. (Dkt. No. 82) at 5)  The national organizations are the National Association of Consumer Advocates (Washington, D.C.) and the National Consumer Law Center (Boston, Massachusetts). (Id.)

The national organizations suggested by Plaintiff are appropriate recipients of a cy pres award. Although all of the class members are New York residents, see Zimmerman, 276 F.R.D. at 176, nothing in the Court's March 27, 2013 memorandum opinion and order requires that a cy pres award recipient be a New York area organization. Other courts in this Circuit have ruled that the national organizations suggested by Plaintiff are appropriate recipients of cy pres awards in FDCPA cases, even where class members are all residents of the same state. See O'Connor v. AR Res., Inc., Civ. No. 3:08CV1703 (VLB), 2012 WL 12743, at *1-2 (D. Conn. Jan. 4, 2012) (approving settlement including cy pres payments to the National Consumer Law Center and the National Association of Consumer Advocates in class action involving only Connecticut residents); Garland v. Cohen & Krassner, No. 08 Civ. 4626 (KAM) (RLM), 2011 WL 6010211, at *3 n.2, *15 (E.D.N.Y. Nov. 29, 2011) (approving settlement including cy pres award to the National Consumer Law Center in class action involving only New York residents).

The Court concludes that the national organizations suggested by Plaintiff are appropriate recipients of a cy pres award. The FDCPA is, of course, a federal statute, and it is obvious that the services provided by the national organizations benefit both New York consumers and those outside New York State. The national organizations will receive a smaller share of the award, however, reflecting the fact that the services they provide benefit both New York residents and out-of-state consumers.

Finally, the Court rejects Defendant's argument that CAMBA Legal Services is not an appropriate recipient of a cy pres award. All five in-state organizations submitted detailed proposals for how they would use the funds to help curb abusive debt collection practices and/or to increase consumer awareness of such practices, (see Apr. 11, 2013 Taylor Decl., (Dkt. No. 82), Exs. D-H), and each will receive a share of the cy pres award.

10

III.   **ATTORNEYS' FEE AND COSTS AWARD**

Plaintiff seeks $433,541.60 in attorneys' fees and $4,742.69 in costs. (Dkt. No. 86) The proposed award reflects the work of six attorneys and three paralegals. (May 3, 2013 Pltf. Br. (Dkt. No. 87) at 11-12; see May 3, 2013 Lemberg Decl. (Dkt. No. 88), Ex. A)

A.   **Legal Standard**

"[T]he FDCPA . . . enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." Jacobson v. Healthcare Fin. Srvs., Inc., 516 F.3d 85, 91 (2d Cir. 2008). Accordingly, "[a] consumer who brings a successful FDCPA lawsuit can recover 'the costs of the action, together with a reasonable attorney's fee as determined by the court.'" Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (quoting 15 U.S.C. § 1692k(a)(3)). "Where a plaintiff prevails [in an FDCPA case], whether or not he is entitled to an award of actual or statutory damages, he should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the court." Id. (citing Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27-28 (2d Cir. 1989); Emanuel v. Am. Credit Exch., 870 F.2d 805, 809 (2d Cir. 1989)).

"'Both the evaluation of reasonable attorneys' fees and the reduction of such fees lies within the sound discretion of the Court.'" Amaprop Ltd. v. Indiabulls Fin. Srvs. Ltd., No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *4 (S.D.N.Y. Mar. 16, 2011) (quoting ACE Ltd. v. CIGNA Corp., No. 00 Civ. 9423 (WK), 2001 WL 1286247, at *2 (S.D.N.Y. Oct. 22, 2001) (citing Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001))); see also Suchodolski Assocs., Inc. v. Cardell Fin. Corp., Nos. 03 Civ. 4148(WHP), 04 Civ.

11

5732(WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) (citing Reed v. A.W. Lawrence

& Co., Inc., 95 F.3d 1170, 1183 (2d Cir. 1996)).  The starting point for an award of attorneys'

fees is the "presumptively reasonable fee."  Arbor Hill Concerned Citizens Neighborhood Ass'n

v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008).  This "initial estimate" is calculated by

multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable

hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

        "In determining a reasonable rate, a court 'may rely on its own knowledge of

comparable rates charged by lawyers in the district.'"  Merck Eprova AG v. Brookstone Pharm.,

LLC, No. 09 Civ. 9684 (RJS), 2013 WL 3146768, at *1 (S.D.N.Y. June 10, 2013) (quoting

Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)).  In exercising its discretion, the

Court must "bear in mind all of the case-specific variables that . . . courts have identified as

relevant," including "[t]he reasonable hourly rate . . . a paying client would be willing to pay,"

"bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to

litigate the case effectively."  Arbor Hill, 522 F.3d at 190 (emphasis in original).  Courts also

consider "the complexity and difficulty of the case, . . . the resources required to prosecute the

case effectively . . . , the timing demands of the case, . . . and other returns (such as reputation,

etc.) that an attorney might expect from the representation."  Id. at 184.

        "Following the determination of the presumptively reasonable fee, the court must

then consider whether an upward or downward adjustment of the fee is warranted based on

factors such as the extent of plaintiff[']s success in the litigation."  Robinson v. City of N.Y., No.

05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009).  However, a court

need not "'become enmeshed in a meticulous analysis of every detailed facet of the professional

representation'" to determine the proper award, Seigal v. Merrick, 619 F.2d 160, 165 n.8 (2d Cir.

1980) (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976)), nor should "[a] request for attorney's fees . . . result in a second major litigation." Hensley, 461 U.S. at 437. The party seeking an attorneys' fee award must demonstrate the reasonableness of the hours spent and rates asserted. See id.

While a court may adjust the presumptively reasonable fee amount, there remains throughout the fee determination process "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).

B.    **Application**

1.    **Hourly Rates**

Plaintiff claims that the presumptively reasonable fee for the work of six attorneys – Sergei Lemberg, Stephen Taylor, Jody Burton, Jennifer DeFrancisco, Martin Mushkin, and Susan Schneiderman – and three paralegals in this action is $289,027.75.[14] (May 3, 2013 Pltf. Br. (Dkt No. 87) at 12-13) Lemberg, Taylor, Burton, and DeFrancisco are all employed at Lemberg and Associates, LLC. (Id. at 9-11; May 3, 2013 Lemberg Decl. (Dkt. No. 88) ¶¶ 1, 10; May 3, 2013 Taylor Decl. (Dkt. No. 90) ¶ 2) Schneiderman was formerly an associate and senior litigator at Lemberg and Associates, and provided "litigation support" in this matter. (Schneiderman Decl. (Dkt. No. 91) ¶¶ 1, 2, 4) Mushkin, who served as co-counsel with Lemberg, has his own firm. (Mushkin Decl. (Dkt. No. 89) ¶ 1 and Ex. 1)

As explained below, the Court concludes that fees are recoverable only for the work of the lead senior attorney, the lead associate, and the three paralegals. Sergei Lemberg is the founder, principal, sole member, and manager of Lemberg & Associates, LLC, and his

---

[14] Plaintiff seeks a fee award of $433,541.60, arguing that a multiplier of 1.5 should be applied to the presumptively reasonable fee. (May 3, 2013 Pltf. Br. (Dkt No. 87) at 1, 16-17)

billing rate is $400 per hour. (May 3, 2013 Pltf. Br. (Dkt No. 87) at 8; May 3, 2013 Lemberg

Decl. (Dkt. No. 88) ¶ 1.) He billed more hours on this matter than any other lawyer. (See May 3,

2013 Pltf. Br. (Dkt No. 87) at 11) Stephen Taylor – a fifth-year associate at Lemberg &

Associates, LLC, with a billing rate of $300 per hour – was the next highest biller. (May 3, 2013

Pltf. Br. (Dkt No. 87) at 8, 11; May 3, 2013 Taylor Decl. (Dkt. No. 90) ¶ 3) Together, Lemberg

and Taylor account for nearly two-thirds of the total number of hours billed. (See May 3, 2013

Pltf. Br. (Dkt No. 87) at 11-12) The paralegals' billing rate is $125 per hour. (Id. at 8)

       "[D]istrict courts should use the 'prevailing [hourly rate] in the community' in

calculating . . . the presumptively reasonable fee." Arbor Hill, 522 F.3d at 190 (second alteration

in original). "[T]he 'community' for purposes of this calculation is the district where the district

court sits." Id. (citing Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir.

1983)).

       "[T]he hourly rates sought" by Plaintiff here "are inconsistent with rates approved

in this district for Fair Debt Collection Practices Act (FDCPA) litigation." Winkfield v.

Kirschenbaum & Phillips, P.C., No. 12 Civ. 7424 (JMF), 2013 WL 371673, at *3 (S.D.N.Y. Jan.

29, 2013). "As one court recently noted, '[c]ourts in this district generally approve fees of $200-

$325 per hour in FDCPA cases and reject fee requests over that amount." Id. (quoting O'Toole

v. Allied Interstate, LLC, No. 12 Civ. 4942 (WHP), 2012 WL 6197086, at *1 (S.D.N.Y. Dec. 12,

2012)) (alteration in original) (reducing partner rate of $425 per hour to $300 per hour); see also

Barile v. Allied Interstate, Inc., No. 12 Civ. 916 (LAP) (DF), 2013 WL 795649, at *5 (S.D.N.Y.

Jan. 30, 2013) ("The rate of $300 per hour also comports with awards that have been made in

other cases, to comparably experienced attorneys [with over twenty years of experience in

consumer law and several years of experience in the FDCPA area] who have successfully

prosecuted actions under the FDCPA."); <u>Ryan v. Allied Interstate, Inc.</u>, 882 F. Supp. 2d 628, 634 (S.D.N.Y. 2012) ("Prior cases in this District have approved fees of $200-$300 per hour in FDCPA cases[ ] . . ."); <u>Dunn v. Advanced Credit Recovery Inc.</u>, No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *6 (S.D.N.Y. Mar. 1, 2012), <u>adopted</u>, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012) (noting, in FDCPA case, that "[i]n this District, courts have found attorneys' fees ranging from $225 to $375 reasonable for civil litigators working in small firms," and applying rate of $300 per hour to lawyers with fifteen to twenty-five years' experience).

   At least one judge in this District has found the billing rates of Lemberg & Associates, LLC unreasonable in the context of an FDCPA action. <u>See</u> Winkfield, 2013 WL 371673, at *3. In connection with a charging lien that the firm sought in connection with an FDCPA case, that court reduced Lemberg's hourly rate to $300 per hour, and reduced a third-year associate's billing rate to $150 per hour. <u>Id.</u>; <u>cf.</u> <u>Barile</u>, 2013 WL 795649, at *5 (reducing a partner's $425 hourly rate in an FDCPA suit to $300 per hour, "in conformity with the rates recently awarded to [that partner] in similar suits in this district").

   In accordance with the case law cited above, Lemberg's rate will be reduced to $300 per hour, and Taylor's hourly rate will be reduced to $200 per hour. <u>See</u> <u>Winkfield</u>, 2013 WL 371673, at *3; <u>Barile</u>, 2013 WL 795649, at *5 (reducing associates' rates from $300 per hour rate to $225 and $200 per hour in an FDCPA suit); <u>O'Toole</u>, 2012 WL 6197086, at *1 (reducing associate rate of $300 per hour to $225 per hour); <u>Woods v. Sieger, Ross & Aguire, LLC</u>, No. 11 Civ. 5689 (JFK), 2012 WL 1811628, at *5 (S.D.N.Y. May 18, 2012) (finding $200 per hour to be a reasonable rate for an eighth-year attorney who had been practicing in the FDCPA area for two years).

The $125 per hour billing rate for paralegals is also somewhat higher than what is typically awarded in FDCPA cases in this District. See Winkfield, 2013 WL 371673, at *3 (finding Lemberg's hourly rate of $75 for paralegal services to be reasonable); Barile, 2013 WL 795649, at *7 (reducing paralegals' $165 and $155 hourly rates to $100 per hour); O'Toole, 2012 WL 6197086, at *1 (reducing paralegal hourly rate of $160 to $100 per hour). Accordingly, the Court will apply a $100 per hour billing rate for paralegal services.

### 2.    Staffing and Time Expended

After determining appropriate hourly rates, courts then consider whether the number of hours billed to the matter is reasonable. See Arbor Hill, 522 F.3d at 190. Courts are required to exclude any hours included in the fee application that were not "reasonably expended." Hensley, 461 U.S. at 434. As with the determination of a reasonable rate, the Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done," New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "'its own familiarity with the case . . . and its experience generally.'" Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985)). "If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought." Wise v. Kelly, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008).

Plaintiff initiated this action on May 14, 2009. (Dkt. No. 1)  Discovery included three depositions – two in Virginia and one in New York – and discovery was concluded by July 1, 2010. (Dkt. No. 24; May 3, 2013 Pltf. Br. (Dkt No. 87) at 2; Def. Br. (Dkt. No. 93) at 1)

16

Plaintiff moved for summary judgment and class certification, and those motions were both granted on September 15, 2011. Zimmerman, 276 F.R.D. 174; (Dkt. No. 49). Defendant objected to Plaintiff's proposed class notification, and this Court ruled on those objections on November 7, 2011. (Dkt. No. 51) Plaintiff then moved for reconsideration of this Court's ruling that class members must provide documents identifying the nature of their debts, and briefing was ordered on that issue. (Dkt. No. 52) This Court issued its final order concerning class notice on January 27, 2012. (Dkt. No. 53) On April 23, 2012, Plaintiff moved for statutory damages and a lead plaintiff incentive award. (Dkt. No. 54) On June 28, 2012, Defendant moved for reconsideration of this Court's decision certifying the class. (Dkt. No. 66) On July 31, 2012, the parties attended mediation. (Def. Br. (Dkt. No. 93) at 30) On March 27, 2013, the Court granted Plaintiff's motion for class and individual statutory damages, denied Plaintiff's request for a lead plaintiff incentive award, and denied Defendant's motion for reconsideration. Zimmerman, 2013 WL 1245552. On May 3, 2013, Plaintiff made the instant motion for an award of attorneys' fees and costs. (Dkt. No. 86)

Plaintiff seeks an attorneys' fee award for a total of 795.6 hours of attorney time and 3.1 hours of paralegal time. (May 3, 2013 Pltf. Br. (Dkt No. 87) at 13) Plaintiff states that these totals reflect a "voluntary reduction" of 5% "to account for any duplication of effort between counsel and to account for any purely clerical tasks which are not compensable." (Id. at 12) Plaintiff has submitted Lemberg & Associates's billing records, as well as attorney Mushkin's billing records, in support of his application. (May 3, 2013 Lemberg Decl. (Dkt. No. 88), Ex. A; Mushkin Decl. (Dkt. No. 89), Ex. 1)

As noted above, six attorneys billed time to this case. While "'[t]he use of multiple attorneys . . . is not unreasonable per se,'" Simmonds v. N.Y.C. Dep't of Corr., No. 06

17

Civ. 5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) (quoting Williamsburg

Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984))

(second alteration in original), assigning numerous attorneys to a simple and straightforward

matter presents a significant risk of inefficiency, duplication, and unnecessary billing. See id. at

*6-7.

> [i]n assessing the extent of staffing and background research appropriate for a
> given case, a district court must be accorded ample discretion. . . . [A] trial judge
> may decline to compensate hours spent by collaborating lawyers or may limit the
> hours allowed for specific tasks, but for the most part such decisions are best
> made by the district court on the basis of its own assessment of what is
> appropriate for the scope and complexity of the particular litigation.

As the Second Circuit has recognized,

New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1146. The guiding principle in

determining whether redundancy has occurred is the "degree of effort reasonably needed to

prevail in the litigation." Id.; see also Sullivan v. Syracuse Hous. Auth., No. 89-CV-1205, 1993

WL 147457, at *3 (S.D.N.Y. May 3, 1993) (district court must ensure that fee award reflects

only work that was "necessary to the litigation" and "a cost efficient use of co-counsel and

outside counsel").

Here, neither the scope nor the complexity of the issues presented justifies the

number of lawyers assigned to, and the hours expended on, this litigation. This matter is a

routine FDCPA case, involving the Defendant's use of simulated legal process. Defendant's

conduct is not novel, see, e.g., Wiener v. Bloomfield, 901 F. Supp. 771, 776-78 (S.D.N.Y. 1995)

(granting summary judgment to plaintiff in FDCPA case where defendant sent plaintiff

documents that conveyed "the . . . impression . . . that legal proceedings had been instituted

against the plaintiff"). Indeed, it falls within the heartland of conduct that the FDCPA forbids.

See 15 U.S.C. § 1692e(9) (prohibiting "[t]he use or distribution of any written communication

18

which simulates or is falsely represented to be a document authorized, issued, or approved by
any court . . . or which creates a false impression as to its source, authorization, or approval"); 15
U.S.C. § 1692e(13) (prohibiting the "false representation or implication that documents are legal
process"); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. No.
95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696) ("[T]he need for the FDCPA
arose because of collection abuses such as '. . . simulating legal process.'").

 Moreover, only three depositions were taken during discovery (May 3, 2013 Pltf.
Br. (Dkt No. 87) at 2; Def. Br. (Dkt. No. 93) at 1), and liability was decided on a motion for
summary judgment. Zimmerman, 276 F.R.D. 174. Class certification was granted at the same
time. Id. Defendant's motion to de-certify the class – while adding to the time Plaintiff's
counsel expended on this matter – was not complex and was "based on a fundamental
misunderstanding of the class action process." See Zimmerman, 2013 WL 1245552, at *3.
Plaintiff's claims for statutory damages were likewise straightforward. See id. *5-7. Although
Plaintiff asserts that the fee application already reflects a 5% reduction (May 3, 2013 Pltf. Br.
(Dkt No. 87) at 13), the 798.7 hours included in the application are nonetheless excessive.
Accordingly, the attorneys' fee award will reflect only the time billed by Lemberg and Taylor –
the two attorneys who played the most central roles in this litigation and who together account
for nearly two-thirds of the hours billed – and the time billed by the paralegals. See Savino v.
Computer Credit Inc., 71 F. Supp. 2d 173, 176 (E.D.N.Y. 1999) (applying an "across-the-board
reduction" of hours "to reflect a reasonable number of hours for pursuing this case").

 Defendant complains that Plaintiff seeks to recover for an excessive number of
hours (Def. Br. (Dkt. No. 93) at 1-2), and that all travel expenses should be reduced by 50%. (Id.
at 10 (citing Wilder v. Bernstein, 975 F. Supp. 276, 283 (S.D.N.Y. 1997) ("Although it is within

the Court's discretion to compensate counsel for travel time at full hourly rates, courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates.") (citations omitted).))  The majority of the hours that Defendant points to as duplicative, however, involve work performed by Lemberg and Mushkin, and work performed by Lemberg and Schneiderman (see, e.g., id. at 11-12, 14-18, 20).  Given that the Court's attorneys' fee award will not reflect Mushkin and Schneiderman's hours, that issue is moot.  Similarly, most of the travel time was billed by Schneiderman, and thus will not be reflected in the attorneys' fee award.  (See May 3, 2013 Lemberg Decl. (Dkt. No. 88), Ex. A at 4)

Defendant also argues that Plaintiff has submitted billing records that are vague, conflicting, and reflect "block-billing." (Def. Br. (Dkt. No. 93) at 2)  While "block-billing" is disfavored and may lack the specificity required for an award of attorneys' fees, it is "not prohibited in this Circuit" as long as the Court can determine the reasonableness of the work performed.  Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999).  "'It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'"  U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 477 (S.D.N.Y. 1989) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 473 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)).  Rather, courts must look "'at the big picture.'" Rodriguez, 84 F. Supp. 2d at 425 (quoting Burr v. Sobol, 748 F. Supp. 97, 100 (S.D.N.Y. 1990)). Moreover, billing descriptions that are "fairly general, [including] terms such as 'case preparation' or 'meeting' . . . [may be] sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed." Raniola v. Bratton, No. 96 Civ. 4482 (MHD), 2003 WL 1907865, at *4 (S.D.N.Y. Apr. 21, 2003) (citing

Tran v. Tran, 166 F. Supp. 2d 793, 800 (S.D.N.Y. 2001) ("Although attorneys must record the general nature of their work, they need not include detailed descriptions of the exact work performed."); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 970 F. Supp. 333, 342 (S.D.N.Y. 1997) ("[W]here an attorney's time entries are vague, courts may attempt to decipher them by reference to 'the context in which these entries occur [to determine] what work was involved.'") (second alteration in original) (quoting Lenihan v. City of N.Y., 640 F. Supp. 822, 826 (S.D.N.Y. 1986))). "The court is not required to assess each entry in isolation; rather, it may use its knowledge of the case and the demands that the issues posed by the case placed on the attorneys to judge whether counsel were wasting significant amounts of time or otherwise performing with less than reasonable efficiency." Raniola, 2003 WL 1907865, at *4 (citing Algie v. RCA Global Commc'ns, Inc., 891 F. Supp. 875, 894-96 (S.D.N.Y. 1994), aff'd, 60 F.3d 956 (2d Cir. 1995)). Because the reasonable number of hours spent on each case is fact and context specific, the inquiry is "committed to the discretion of the district court." Clarke, 960 F.2d at 1153.

Here, the descriptions of the services provided are sufficient, in context, to allow the Court to evaluate the reasonableness of the hours expended, and the Court will not impose a further reduction on these grounds.

### 3.   **Multiplier Applied to Fee Application**

Plaintiff argues that a 1.5 multiplier should be applied to the fee request, given the results obtained and the need to incentivize litigation against other debt collectors who violate the FDCPA. (May 3, 2013 Pltf. Br. (Dkt. No. 87) at 1, 16-17)

"[A] lodestar multiplier aims to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." Gross v. Washington Mut. Bank,

F.A., No. 02 CV 4135 (RML), 2006 WL 318814, at *6 (E.D.N.Y. Feb. 9, 2006) (citing In re Rite

Aid Corp. Sec. Litig., 396 F.3d 294, 305-06 (3d Cir. 2005)).  "Courts apply a multiplier to the

lodestar calculation for any number of reasons, e.g., to reflect the risk of nonrecovery; to act as

an incentive for the bringing of socially beneficial litigation; or to reward counsel for an

exceptional result."  Id.  "On the other side of the ledger, however, is [the Court's] longstanding

concern for moderation.  That concern is amplified by [a] nagging suspicion that attorneys in

these [class action] cases are routinely overcompensated for such things as contingency risk."

Goldberger, 209 F.3d at 57.  Accordingly, multiplier "enhancements may be awarded [only] in

"'rare' and 'exceptional' circumstances."  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552

(2010).

       Application of a multiplier here is not appropriate.  As noted above, this is a

routine FDCPA case that broke no new ground.  Given the nature of Defendant's conduct, the

risk of non-recovery was small, and the result – while favorable to Zimmerman and the class

members – cannot be described as "exceptional."  Moreover, the substantial class award,

together with an attorney's fee award not subject to a multiplier, is sufficient to discourage future

violations of the FDCPA.  Therefore, a multiplier will not be applied.

       **4.**    **Costs**

       In addition to an attorneys' fee award, a prevailing party in an FDCPA case may

be entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys

and ordinarily charged to their clients."  U.S. Football League, 887 F.2d at 416.  Recovery is not

permitted, however, for costs associated with routine office overhead.  See Kuzma v. I.R.S., 821

F.2d 930, 934 (2d Cir. 1987) ("[N]onrecoverable routine office overhead . . . must normally be

absorbed within the attorney's hourly rate.").

Plaintiff seeks a costs award of $4,742.69, reflecting filing fees, process server expenses, travel expenses, court reporting fees, and postage and copying expenses. (May 3, 2013 Lemberg Decl. (Dkt. No. 88), Ex. B) Such expenses are properly included in a fee award. See, e.g., Kuzma, 821 F.2d at 933-34 (providing a non-exclusive list of recoverable costs, including "photocopying, travel, and telephone costs"); James v. Nat'l R.R. Passenger Corp., No. 02 Civ. 3915 (RJH) (AJP), 2005 WL 6182322, at *20 (S.D.N.Y. Mar. 28, 2005) ("[C]laimed expenses . . ., among other things, may include charges relating to document reproduction, travel, and telephone charges."); Anderson v. City of N.Y., 132 F. Supp. 2d 239, 245-47 (S.D.N.Y. 2001) (allowing for recovery of service, court filing, photocopying, witness, and deposition fees, as well as computerized legal research costs).

Defendant does not dispute Plaintiff's right to court filing and process server fees – which amount to $395 – but argues that the other components of Plaintiff's' costs request should be denied based on a lack of documentation. (Def. Br. (Dkt. No. 93) at 33-34) Plaintiff has submitted a list describing each disputed cost item, the amount of the expense, and the date it was incurred. (May 3, 2013 Lemberg Decl. (Dkt. No. 88), Ex. B) However, Plaintiff has not provided back-up documentation for these expenses, such as invoices, receipts, or bills.

"Where an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award any costs." Savarese v. Cirrus Design Corp., No. 09 Civ. 1911 (JGK) (KNF), 2010 WL 532289, at *7 (S.D.N.Y. Feb. 8, 2010), adopted by 2010 WL 815027 (S.D.N.Y Mar. 9, 2010); see also I.L.G.W.U. Nat'l Ret. Fund v. ESI Grp., Inc., No. 92 Civ. 0597 (PKL), 2003 WL 135797, at *4 (S.D.N.Y. Jan. 17, 2003) ("[A] failure [to submit any bills or receipts for expenses] can be fatal to a request for expenses."). However, where "plaintiffs' counsel . . . limit[s] expenses . . . and there is no doubt that there were legitimate

expenses in th[e] case, the Court [may] exercise its discretion [and award costs]." I.L.G.W.U. Nat'l Ret. Fund, 2003 WL 135797, at \*4; see also New York State Teamsters Council Health & Hosp. Fund v. Estate of DePerno, 856 F. Supp. 725, 727 (N.D.N.Y. 1994) ("In the absence of any contemporaneous records, the court would be entitled to completely deny such an application.  However, the court is aware that certain expenses were incurred and could have been proven simply by retaining the bills or receipts. . . . [T]he court will award fifty per cent (50%) of the request.") (internal citations omitted).  But see Winkfield, 2013 WL 371673, at \*4 ("In order for a court to award reimbursement, costs must be substantiated."); James, 2005 WL 6182322, at \*20 ("Plaintiffs seeking to recover costs must submit bills or receipts for claimed expenses. . . .").  Where district courts exercise their discretion to award costs despite a lack of documentation, the award is reduced.  See I.L.G.W.U. Nat'l Ret. Fund, 2003 WL 135797, at \*4 (reducing costs award from $7,311.98 to $4,000 in light of failure to submit "any bills or receipts"); see also New York State Teamsters Council Health & Hosp. Fund, 856 F. Supp. at 727 ("In the absence of the appropriate documentation, the court will award fifty per cent (50%) of the request. . . .").

Given that three depositions were taken by Plaintiff in this action – including two in Virginia – it is obvious that Plaintiff incurred expenses for stenographic services and travel.  It is also apparent that litigating this matter for three years would have involved some amount of copying and postage expenses.  These are the types of "legitimate expenses that would normally be charged to clients." I.L.G.W.U. Nat'l Ret. Fund, 2003 WL 135797, at \*4.  The complete lack of back-up documentation does, however, warrant a reduction, especially given that Lemberg & Associates, LLC has previously been instructed by a court in this District that it must provide supporting documentation when seeking a costs award.  See Winkfield, 2013 WL 371673, at \*4

("Here, Lemberg has not provided any information or supporting documentation to the Court as to the costs it incurred. Accordingly, Lemberg is directed to submit these supporting materials . . ."). Under these circumstances, only the $395 in undisputed costs and half of the disputed costs – which amount to $2,173.85 – will be allowed. See I.L.G.W.U. Nat'l Ret. Fund, 2003 WL 135797, at *4 (reducing costs award from $7,311.98 to $4,000); New York State Teamsters Council Health & Hosp. Fund, 856 F. Supp. at 727 (reducing costs award by 50%). Accordingly, the total costs award is $2,568.85.

*      *      *      *

Fees for the hours expended by Lemberg, Taylor, and the paralegals – at the Court-adjusted hourly rates – amount to $127,550.00. Together with the costs amount of $2,568.85, Plaintiff is entitled to $130,118.85 in attorneys' fees and costs.

## CONCLUSION

For the reasons stated above and in the Court's March 27, 2013 memorandum opinion and order, PRA is ordered to pay $350,000.00 in damages, $127,550.00 in attorneys' fees, and $2,568.85 in costs. All payments shall be made to Plaintiff's counsel, who will distribute the damages to the class members as follows:

(1)   Brown: $500;

(2)   Burgos: $500;

(3)   Cathcart: $500;

(4)   Cox: $500;

(5)   Ford: $500;

(6)   Hinkley: $500;

(7)   Johnson: $500;

  (8)  Judson: $500;

  (9)  Kane: $500;

  (10)  Kavulich: $500;

  (11)  Moore: $500;

  (12)  Morrison: $500;

  (13)  Mundell: $500;

  (14)  Panarella: $500;

  (15)  Schatt: $500;

  (16)  Simmons: $500;

  (17)  Smith: $500;

  (18)  Sotto: $500;

  (19)  Spencer: $500;

  (20)  Swygert: $500;

  (21)  Thomas: $500;

  (22)  Tortorili: $500;

  (23)  Walters: $500; and

  (24)  Zimmerman: $1,500.

The remaining $337,000 of the class award, as well as any of the above individual awards for which payments are not cashed by the claimants within 90 days, will be distributed to the cy pres award recipients as follow:

  (1)  The Empire Justice Center (Rochester, New York): 1/6 of the remaining award;

  (2)  The Legal Aid Society (New York, New York): 1/6 of the remaining award;

  (3)  The Neighborhood Economic Development Advocacy Project (New York, New York): 1/6 of the remaining award;

(4)     South Brooklyn Legal Services (Brooklyn, New York): 1/6 of the remaining award;

(5)     CAMBA Legal Services (Brooklyn, New York): 1/6 of the remaining award;

(6)     The National Association of Consumer Advocates (Washington, D.C.): 1/12 of the remaining award; and

(7)     The National Consumer Law Center (Boston, Massachusetts): 1/12 of the remaining award.

The Clerk of the Court is directed to enter judgment against PRA consistent with this memorandum opinion and order, to terminate the motion (Dkt. No. 86), and to close this case.

Dated: New York, New York
       December 11, 2013

                              SO ORDERED.

                              _Paul G. Gardephe_
                              Paul G. Gardephe
                              United States District Judge